## AGREEMENT ON THE REHABILITATION, EXPLORATION, DEVELOPMENT AND PRODUCTION SHARING FOR THE BLOCK, INCLUDING THE KURSANGI AND KARABAGLI OIL FIELDS IN THE AZERBAIJAN REPUBLIC

### BETWEEN

### THE STATE OIL COMPANY OF THE AZERBAIJAN REPUBLIC,

### FRONTERA RESOURCES AZERBAIJAN CORPORATION,

### DELTA/HESS (K&K) LIMITED

### AND

### SOCAR OIL AFFILIATE

# TABLE OF CONTENTS

**ARTICLES**                                                                        **PAGE**

ARTICLE 1
PARTICIPATING INTERESTS                                                             8

ARTICLE 2
GRANT OF RIGHTS AND SCOPE                                                           9

ARTICLE 3
WARRANTIES AND GENERAL RIGHTS AND OBLIGATIONS OF THE PARTIES    10

ARTICLE 4
CONTRACT AREA                                                                       18

ARTICLE 5
REHABILITATION AND PRODUCTION PROGRAMME                                             19

ARTICLE 6
DEVELOPMENT AND PRODUCTION PERIOD                                                   21

ARTICLE 7
SPECIAL PROVISION GOVERNING CONTRACTOR OBLIGATIONS FOR
EXPLORATION WORK IN THE CONTRACT EXPLORATION AREA                                   22

ARTICLE 8
STEERING COMMITTEE FOR PROJECT MANAGEMENT AND ANNUAL
WORK PROGRAMMES                                                                     30

ARTICLE 9
OPERATING COMPANY, PERSONNEL AND TRAINING                                           37

ARTICLE 10
REPORTS AND ACCESS TO PETROLEUM OPERATIONS                                          43

ARTICLE 11
USE OF LAND                                                                         46

ARTICLE 12

2

USE OF FACILITIES                                               47

ARTICLE 13
CONTRACTOR'S RECOVERY OF PETROLEUM COSTS AND
PRODUCTION SHARING                                             50

ARTICLE 14
LOCAL MARKET OIL                                               57

ARTICLE 15
TAXATION                                                       60

ARTICLE 16
VALUATION OF PETROLEUM                                         90

ARTICLE 17
OWNERSHIP, USE AND ABANDONMENT OF ASSETS                       98

ARTICLE 18
NATURAL GAS                                                    107

ARTICLE 19
FOREIGN EXCHANGE                                               110

ARTICLE 20
ACCOUNTING METHOD                                              112

ARTICLE 21
IMPORT AND EXPORT                                              113

ARTICLE 22
DISPOSAL OF PRODUCTION                                         118

ARTICLE 23
INSURANCE, LIABILITIES AND INDEMNITIES                         123

ARTICLE 24
FORCE MAJEURE                                                  128

ARTICLE 25
VALIDITY, ASSIGNMENT AND GUARANTEES                            132

3

ARTICLE 26
APPLICABLE LAW, ECONOMIC STABILIZATION AND ARBITRATION          137

ARTICLE 27
NOTICES          140

ARTICLE 28
EFFECTIVE DATE          142

ARTICLE 29
ENVIRONMENTAL PROTECTION AND SAFETY          144

ARTICLE 30
CONFIDENTIALITY          147

ARTICLE 31
BONUS PAYMENTS          150

ARTICLE 32
TERMINATION          152

ARTICLE 33
MISCELLANEOUS          158


**APPENDICES**

APPENDIX 1
DEFINITIONS          (1)

APPENDIX 2
CONTRACT AREA AND MAP          (14)

APPENDIX 3
ACCOUNTING PROCEDURE          (17)

APPENDIX 4
FORM OF CONTRACTOR PARTY'S ULTIMATE PARENT
COMPANY GUARANTEE          (35)

APPENDIX 5

4

GUARANTEE AND UNDERTAKING OF THE GOVERNMENT OF THE
AZERBAIJAN REPUBLIC                                              (37)

APPENDIX 6
ARBITRATION PROCEDURE                                           (47)

APPENDIX 7
CRUDE OIL AND NATURAL GAS MEASUREMENT AND EVALUATION
PROCEDURE                                                       (50)

APPENDIX 8
DESIGN STANDARDS AND SPECIFICATIONS                             (53)

APPENDIX 9
EXPLORATION WORK PROGRAMME                                      (55)

APPENDIX 10
LIST AND PERFORMANCE OF SUBSURFACE RESERVOIRS AND HORIZONS      (59)

APPENDIX 11
LOCAL MARKET OIL PROGRAMME                                      (63)

ADDENDUM RELATING TO THE FORMATION OF SOCAR OIL AFFILIATE       -1-

## AGREEMENT ON THE REHABILITATION, EXPLORATION, DEVELOPMENT AND PRODUCTION SHARING FOR THE BLOCK, INCLUDING THE KURSANGI AND KARABAGLI OIL FIELDS IN THE AZERBAIJAN REPUBLIC

THIS AGREEMENT, made and entered into in Baku, Azerbaijan Republic, this____ day of _____, 1998 by and between:

**THE STATE OIL COMPANY OF THE AZERBAIJAN REPUBLIC** ("SOCAR") Government body on the one hand; and

**FRONTERA    RESOURCES    AZERBAIJAN    CORPORATION** ("Frontera") a company incorporated in Cayman Islands; and

**DELTA/HESS (K&K) LIMITED** ("Delta/Hess") a company incorporated in Cayman Islands; and

**SOCAR OIL AFFILIATE** ("SOA") a company to be fully owned and formed by SOCAR

On the other hand, all the Parties being legal persons in accordance with the legislation of the countries of their registration as confirmed by appropriate documentation thereof,

### WITNESSETH

**WHEREAS**, in accordance with the Constitution of the Azerbaijan Republic, and the Constitutional Act of State Independence of the Azerbaijan Republic, dated 18 October 1991, and the Law on Ownership in the Azerbaijan Republic, dated 9 November 1991, ownership of all Petroleum existing in its natural state in underground or subsurface strata in the Azerbaijan Republic is vested in the Azerbaijan Republic, and based upon the below referenced authorisations the authority to control and manage said Petroleum has been vested in SOCAR; and

6

**WHEREAS**, pursuant to Presidential Edict No 200 concerning the creation of the State Oil Company of the Azerbaijan Republic dated 13 September 1992 and its Charter, SOCAR is vested with the authority to carry out the exploration and development of all Petroleum in the Azerbaijan Republic, and pursuant to Presidential Decree No 784 "On the Exploration and Development of the Block, including the Kursangi, and Karabagli Oil Fields in the Azerbaijan Republic" dated 17 April 1998, SOCAR is granted the rights to carry out negotiations and conclude this Agreement; and

**WHEREAS**, SOCAR has carried out certain work in the Contract Area and now wishes to promote the rehabilitation, exploration for, and subsequent development and production of Petroleum existing in its natural state in, on or under the Contract Area; and

**WHEREAS**, the Parties have executed the Agreement on the Basic Principles and Provisions of the Rehabilitation, Exploration, Development and Production Sharing Agreement for the Block including the Kursangi and Karabagli Oil Fields in the Azerbaijan Republic dated 2 June 1998, and such principles and provisions have constituted the framework of this Agreement; and

**WHEREAS**, Contractor has the technical knowledge and experience, the administrative and managerial expertise, and financial resources to efficiently develop and produce the Petroleum resources of the Contract Area, and desires to contract with SOCAR for that purpose.

**NOW THEREFORE**, for and in consideration of the premises and mutual covenants hereinafter set forth, the Parties agree as follows:

## ARTICLE 1

### PARTICIPATING INTERESTS

1.1 The rights and obligations under this Agreement of the Contractor Parties shall be held in the following respective percentage Participating Interests as of the date this Agreement is executed:

| CONTRACTOR PARTIES | PERCENTAGE |
|---|---|
| SOA | 50.0% |
| Frontera | 30.0% |
| Delta/Hess | 20.0% |
| TOTAL | 100.00% |

1.2 The Contractor Parties agree that their respective percentage Participating Interest shares under this Agreement, as set forth in Article 1.1 above, replace any rights and obligations which may exist regarding the Contract Area by virtue of any prior agreement or contract between any of the Contractor Parties or their Affiliates on the one hand, and any Governmental Authority or SOCAR on the other hand. The Parties agree that, from the Effective Date, this Agreement constitutes the sole and complete understanding between SOCAR and the Contractor Parties regarding the Contract Area.



## ARTICLE 2

## GRANT OF RIGHTS AND SCOPE

**2.1    Grant of Exclusive Right**

SOCAR hereby grants to Contractor the sole and exclusive right to conduct Petroleum Operations within and with respect to the Contract Area in accordance with the terms of this Agreement and during the term hereof. Except for the rights expressly provided for herein, this Agreement shall not include rights for any activity other than Petroleum Operations with respect to surface areas or to any other natural resources.

**2.2**    Except as expressly provided elsewhere herein, in the event production resulting from Petroleum Operations, upon completion of commercial production from the Contract Area at the end of the term of this Agreement, inclusive of all extensions provided in Article 6 is insufficient for full recovery of Contractor's Capital Costs and Operating Costs as provided hereunder, then Contractor shall not be entitled to any reimbursement or compensation for any of its costs not recovered.



## ARTICLE 3

## WARRANTIES AND GENERAL RIGHTS
## AND OBLIGATIONS OF THE PARTIES

### 3.1    Warranties of SOCAR

SOCAR represents and warrants that:

(a)    it is duly organised and validly existing in accordance with the terms of its Charter; and

(b)    it has full authority under the laws of the Azerbaijan Republic to execute and perform this Agreement, to grant the rights and interests to Contractor as provided under this Agreement and to fulfil its obligations under this Agreement.

### 3.2    General Obligations of SOCAR

(a)    Upon the request of Contractor for the implementation of Petroleum Operations, SOCAR within the full limits of its authority shall use its best lawful endeavours with respect to Governmental Authorities to assist Contractor to obtain the following:

(i)    any necessary Governmental Authority approvals, including but not limited to customs clearances, visas, residence permits, access to communication facilities, licenses to enter land, import and export licenses, the opening of bank accounts, the acquisition of office space and employee accommodation, as may be necessary for efficient implementation of Petroleum Operations; and

(ii)    all geological, geophysical, geochemical and technical data (including well data and any other information) of relevance to the Contract Area not in SOCAR's possession or under its control.

10

(b)    SOCAR within the full limits of its authority shall also use its best lawful endeavours to assist Contractor in all other relevant matters as may be necessary for the efficient implementation of Petroleum Operations.

(c)    Contractor shall reimburse SOCAR for any lawful reasonable actual direct costs incurred with respect to the provision of the foregoing, provided such costs are supported by appropriate documentary evidence, and such reimbursements shall be Operating Costs.

(d)    Upon request of Contractor, SOCAR shall provide to Contractor all geological, geophysical, geochemical and technical data and information in the possession or control of SOCAR or its Affiliates of relevance to the Contract Area including all kinds of well data. Contractor shall pay the actual direct costs incurred by SOCAR in the implementation of this Agreement in gathering together, handling and delivering any such data or information to Contractor, which costs will be invoiced to Contractor by SOCAR on the basis that SOCAR is to suffer no loss and obtain no gain, and which costs shall be Operating Costs. If Contractor does not accept that any items as invoiced by SOCAR satisfy this requirement, Contractor shall notify SOCAR of any such objections and SOCAR and Contractor shall take all necessary steps to mutually resolve all objections raised by Contractor. SOCAR makes no warranties as to the accuracy or completeness of any such data or information in connection with the performance of such obligation.

## 3.3    Warranties and Rights of Contractor Parties

(a)    Each Contractor Party represents that it is duly organised and validly existing in accordance with the terms of its foundation documents and is authorised, subject to governmental authorisations, to establish and maintain such branches and offices in the Azerbaijan Republic and elsewhere as may be necessary to conduct Petroleum Operations in accordance with the terms and conditions of this Agreement.

(b)    Each Contractor Party, its Affiliates, and Contractor's Sub-contractors are hereby authorised throughout the term of this Agreement to establish such branches, permanent establishments, permanent representation and other forms of business in the Azerbaijan Republic as may be necessary or appropriate to qualify to do business in the Azerbaijan Republic and to conduct or participate in Petroleum Operations, including the purchase, lease or acquisition of any property required for Petroleum Operations, provided such establishments and other forms of businesses comply with the formalities and procedures of the laws of the Azerbaijan Republic in respect thereof.

### 3.4    General Obligations of Contractor Parties

(a)    Subject to Article 3.5, the Contractor Parties shall provide the necessary funds to explore, appraise, evaluate and develop the Petroleum resources within the Contract Area in accordance with the terms and conditions set forth in this Agreement.

(b)    Contractor shall conduct Petroleum Operations in accordance with the terms of this Agreement in a diligent, safe and efficient manner and in accordance with generally accepted principles of the international Petroleum industry. As regards design standards and specifications for facilities and equipment the Design Standards shall apply. No Contractor Party shall be required to act or refrain from acting if to do so would make such Contractor Party or its Ultimate Parent Company liable to penalisation under the laws of any jurisdiction applicable to such Contractor Party or its Ultimate Parent Company notwithstanding anything to the contrary in this Agreement.

### 3.5    Special Provision for Carrying SOA's Participating Interest

(a)    Frontera, Delta/Hess and their permitted successors and assignees and SOA's assignees ("the Other Contractor Parties") shall have the obligation to carry, in proportion to their Participating Interests, one hundred (100) percent of SOA's Petroleum Costs attributable to SOA's Participating Interest as follows:

13

(i)    For Petroleum Operations in the Contract Rehabilitation Area: from the Effective Date and until the end of the first period of four (4) consecutive Calendar Quarters in which the average daily rate of Crude Oil produced from the Contract Rehabilitation Area is at least two (2) times the average daily rate of Crude Oil produced from the Contract Rehabilitation Area in 1997, as defined in the Local Market Oil Programme (Carry 1);

(ii)    For Petroleum Operations in the Contract Exploration Area: from the Effective Date and until the Commencement Date of Commercial Production from the Contract Exploration Area (Carry 2).

(b)    From the Effective Date, Carry 1 shall be reimbursed to the Other Contractor Parties in proportion to their Participating Interests as follows:

(i)    Carry 1 shall be reimbursed only out of one hundred (100) percent of Cost Recovery Petroleum from the Contract Rehabilitation Area attributable to SOA, pursuant to Article 13.3 of this Agreement.

(ii)    Transfer of title to the Other Contractor Parties of volumes of Petroleum from the Contract Rehabilitation Area to reimburse Carry 1, as defined in Article 3.5(b)(i), shall be made at the Delivery Point. The value of the said volumes of Petroleum shall be calculated in accordance with the provisions of Article 16.3.

14

    (iii)   Notwithstanding Article 3.5(b)(i) above, SOA shall have the right to reimburse in advance all or a part of the unrecovered balance of Carry 1 ("Unrecovered Balance 1") out of its share of Profit Petroleum or otherwise. The Unrecovered Balance 1 means all funds advanced by the Other Contractor Parties to carry SOA's Participating Interest under Article 3.5(a)(i) less the amounts in equivalent value to Petroleum compensation described in Article 3.5(b)(i).

The foregoing provisions related to reimbursement of Carry 1 shall be valid until Carry 1 shall have been reimbursed in full.

(c)    From the commencement of Petroleum production, Carry 2 shall be reimbursed to the Other Contractor Parties in proportion to their Participating Interests as follows:

    (i)   Carry 2 shall be reimbursed only out of one hundred (100) percent of Cost Recovery Petroleum from the Contract Exploration Area attributable to SOA, pursuant to Article 13.4 of this Agreement.

    (ii)   From the Commencement Date of Commercial Production from the Contract Exploration Area and until the Other Contractor Parties have been reimbursed in full, an interest rate equal to one-quarter (1/4) of LIBOR plus zero point twenty five (0.25) percent or an interest rate equal to two point twenty five (2.25) percent, whichever is less, shall be applied to and aggregated with the unrecovered balance of Carry 2 on a Calendar Quarter basis ("Unrecovered Balance 2"). The Unrecovered Balance 2 means all funds advanced by the Other Contractor Parties to carry SOA's Participating Interest under Article 3.5(a)(ii) less the amounts in equivalent value to Petroleum compensation described in Article 3.5(c)(i) accumulated with the interest above.

15

(iii)    Transfer of title to the Other Contractor Parties of volumes of Petroleum to reimburse Carry 2, as defined in Article 3.5(c)(I), shall be made at the Delivery Point. The value of the said volumes of Petroleum shall be calculated in accordance with the provisions of Article 16.2.

(iv)    Notwithstanding Article 3.5(c)(i) above, SOA shall have the right to reimburse in advance all or a part of the Unrecovered Balance of Carry 2 out of its share of Profit Petroleum or otherwise

The foregoing provisions related to reimbursement of Carry 2 shall be valid until Carry 2 shall have been reimbursed in full.

(d)    If SOA assigns all or a part of its Participating Interest to any Third Party or Contractor Party, the obligations of the Other Contractor Parties provided for in Article 3.5(a) of this Agreement shall be reduced to the extent of the Participating Interest assigned to such Third Party or Contractor Party. SOA and/or SOA's assignee shall be liable to reimburse to the Other Contractor Parties the part of the Unrecovered Balance 1 and/or the Unrecovered Balance 2 corresponding to the Participating Interest assigned at the date of the assignment under the terms described in Article 3.5(b) and Article 3.5(c) respectively. The acceptance by SOA and/or SOA's assignee of the said obligation for reimbursement shall be a binding provision of such assignment.

(e)    If SOCAR exercises its right to terminate this Agreement pursuant to Article 32.2, or if Contractor terminates this Agreement relinquishing the Contract Area in accordance with Article 32.3, then the Other Contractor Parties shall lose their rights to recover the Unrecovered Balance.

(f)    In no event shall an increase by SOA of its Participating Interest above fifty (50) percent under this Agreement increase the obligation of the Other Contractor Parties to carry SOA's Participating Interest in accordance with Article 3.5(a).

16

(g)    If SOA gives notice to the Other Contractor Parties that it wishes to surrender any part of its Participating Interest, from the commencement of the next Calendar Quarter following the date of such notice the obligation of the Other Contractor Parties to carry, and the obligation of SOA to reimburse Carry 1 and Carry 2 shall terminate with respect to such Participating Interest surrendered.

## ARTICLE 4

### CONTRACT AREA

For purposes of this Agreement the Contract Area shall be divided into the Contract Rehabilitation Area and the Contract Exploration Area.

The Contract Rehabilitation Area means the surface of the Contract Area and all subsurface reservoirs and horizons within the Contract Area from the surface to the base of Zone XIII.

The Contract Exploration Area means the surface of the Contract Area and all subsurface reservoirs and horizons within the Contract Area below the base of Zone XIII.

The list and performance of subsurface reservoirs and horizons being produced by SOCAR at the Effective Date is given in Appendix 10 to this Agreement.

Contractor shall have the right to penetrate the reservoirs and horizons within the Contract Rehabilitation Area in order to penetrate the Contract Exploration Area. Contractor shall have the right to deepen or sidetrack any well in the Contract Rehabilitation Area in order to penetrate the Contract Exploration Area.

When a well is tested or completed in, or produces from, both the Contract Exploration Area and the Contract Rehabilitation Area, Contractor shall properly allocate the Petroleum Costs relating to the well between the two areas.

## ARTICLE 5

## REHABILITATION AND PRODUCTION PROGRAMME

Within ninety (90) days from the Effective Date, Contractor shall prepare and submit to SOCAR for its approval the draft rehabilitation and production plan for the Kursangi and Karabagli fields (the "Rehabilitation and Production Programme") which shall specify Contractor's obligation to achieve not later than the expiry of two (2) years from the date of SOCAR's approval of the Rehabilitation and Production Programme an average daily rate of Crude Oil produced from the Contract Rehabilitation Area within ninety (90) consecutive days that is equal to or greater than one-hundred fifty (150) percent of the average daily rate of Crude Oil produced in 1997, as defined in the Local Market Oil Programme.

SOCAR shall approve or disapprove the Rehabilitation and Production Programme within sixty (60) days after receipt thereof. Unless SOCAR requests in writing to Contractor any changes to the Rehabilitation and Production Programme within sixty (60) days of receipt thereof, the Rehabilitation and Production Programme shall be deemed approved by SOCAR. If SOCAR requests changes to the Rehabilitation and Production Programme, Contractor and SOCAR shall discuss a revised Rehabilitation and Production Programme. In the event that the Rehabilitation and Production Programme has not been approved by SOCAR within sixty (60) days of the commencement of such discussion, Contractor may within a further forty (40) days commence arbitration under the Arbitration Procedure to decide the terms of the Rehabilitation and Production Programme. Until the Rehabilitation and Production Programme is approved (or decided by arbitration), Contractor may conduct operations for the orderly operation, production and rehabilitation of the Contract Rehabilitation Area in accordance with good practice in the international petroleum industry.

In the event other than Force Majeure Contractor does not submit to SOCAR the Rehabilitation and Production Programme or does not achieve the average daily rate of Crude Oil production pursuant to the Rehabilitation and Production Programme in the said time and amount as defined in this Article, which shall be deemed to be a Material Breach, SOCAR shall have the right to terminate this Agreement in relation to the Contract Rehabilitation Area pursuant to Article 32.1(b) of this Agreement, and any unrecovered costs incurred by Contractor with respect to the Contract Rehabilitation Area from the Effective Date to the date of termination of this Agreement, including but not limited to Bonus payments, shall not be recoverable.

Implementation of Petroleum Operations by Contractor shall be through Annual Work Programmes and Budgets the approval of which shall be deemed to amend the Rehabilitation and Production Programme to the extent necessary.

## ARTICLE 6

### DEVELOPMENT AND PRODUCTION PERIOD

The Development and Production Period shall begin from the date of SOCAR's approval of the Rehabilitation and Production Programme and shall continue for twenty-five (25) years from such date. After the period of twenty-five (25) years the Development and Production Period may be extended by additional five (5) years subject to SOCAR's approval.

21

## ARTICLE 7

### SPECIAL PROVISION GOVERNING CONTRACTOR OBLIGATIONS FOR EXPLORATION WORK IN THE CONTRACT EXPLORATION AREA

**7.1**   <u>Exploration Period</u>

The Exploration Period shall be three (3) years from the Effective Date of this Agreement.

**7.2**   <u>Minimum Exploration Work Programme</u>

(a)   During the Exploration Period, notwithstanding any provision of Article 5 to the contrary, Contractor shall carry out the Minimum Exploration Work Programme ("MEWP") including the following work:

(i)   Shoot, process and interpret three-dimensional seismic in the Contract Exploration Area and carry out site survey in the Contract Exploration Area planned for drilling operations to ensure a safe and environmentally sound basis for drilling.

(ii)   Drill in the Contract Exploration Area at least three (3) exploration wells.

(b)   During the Exploration Period, Contractor shall provide SOCAR with all information on operations specified in Article7.2(a) – both routine and final – after completion of seismic, drilling of exploration wells and all other work.

22

(c)     Types, methods, and scope of work, as defined in Article 7.2(a); methods and list of analyses, including core samplings, in the process of drilling and completion of the exploration wells; also, types, volumes, and deadlines for provision of information on such work by Contractor to SOCAR shall be described in Exploration Work Programme.

(d)     Contractor's failure to perform all or a portion of its obligations under the MEWP set out in Article 7.2(a), during the Exploration Period shall constitute a Material Breach by Contractor of its obligations. In the event of such Material Breach, SOCAR shall have the right to terminate this Agreement with respect to the Contract Exploration Area pursuant to Article 32.1, and any costs incurred by Contractor in relation to the Contract Exploration Area from the Effective Date, including but not limited to Bonus payments shall not be recoverable. Termination of this Agreement by SOCAR pursuant to this Article 7.2(d) shall be SOCAR's sole remedy against Contractor for Material Breach under this Article 7.2(d). Such termination shall be without prejudice to any claims either SOCAR or Contractor may have which arose prior to such termination.

Lack and/or unavailability of any rigs, facilities, infrastructure, etc., and any other circumstances caused by the need to co-ordinate infrastructural requirements with the work programmes of petroleum operators in the Azerbaijan Republic shall not constitute a basis for Contractor to modify and change any work set out in the MEWP to perform during the Exploration Period or the Additional Exploration Period or for their extension.

(e)     The sole excuse for the failure to carry out operations under the MEWP during the Exploration Period set out in Article 7.2(a), or the additional work, as set out in Article 7.3 during the Additional Exploration Period, may be the occurrence of Force Majeure circumstances.

23

### 7.3    Additional Exploration Period

(a)    Subject to complete and timely fulfilment by Contractor of the exploration work under the MEWP as set out in Article 7.2(a) to be performed during the Exploration Period, Contractor may, not less than ninety (90) days prior to the end of the Exploration Period, notify SOCAR in writing of its desire to carry out additional exploration work and provide a list of types and scope of work and justification of such additional exploration work.

Such notice shall request SOCAR's written approval of the performance by Contractor of the proposed additional exploration work during the Additional Exploration Period and SOCAR shall declare in writing its approval or disapproval (such approval not to be unreasonably withheld) within ninety (90) days of receipt of such written request from Contractor and the Exploration Period shall automatically be extended until such approval has been given by SOCAR. Contractor shall have the right to proceed to the Additional Exploration Period which period shall be no more than two (2) years from the later of the end of the Exploration Period or receipt of SOCAR's approval. During the Additional Exploration Period Contractor shall drill at least two (2) Exploration Wells.

(b)    Contractor's failure to perform the additional exploration work (or any portion thereof) to be performed during the Additional Exploration Period other than as a result of Force Majeure shall constitute a Material Breach by Contractor of its obligations under this Agreement. In the event of such Material Breach, SOCAR shall have the right to terminate this Agreement in relation to the Contract Exploration Area pursuant to Article 32.1 hereof and costs incurred by Contractor from the Effective Date with respect to the Contract Exploration Area during the Exploration Period, and the Additional Exploration Period, including but not limited to Bonus payments, shall not be recoverable. Termination of this Agreement by SOCAR pursuant to this Article 7.3 shall be SOCAR's sole remedy against Contractor for Material Breach under this Article 7.3. Such termination shall be without prejudice to any claims either SOCAR or Contractor may have which arose prior to such termination.

24

7.4   <u>Discovery</u>

Before the end of the Exploration Period or if Contractor enters the Additional Exploration Period then before the end of the Additional Exploration Period, Contractor shall notify SOCAR in writing of a Discovery and its commerciality, summarising relevant information relating to said Discovery, including but not limited to the following, to the extent same are available: location plan, geological maps and interpretations, seismic and other geophysical data, drilling reports, well logs, core samplings, lithologic maps and description of formations, drill-stem tests, completion reports, production tests including quantities of fluids produced, build-up/draw-down tests and pressure analyses, and analyses of oil, gas and water samples and other information consistent with generally accepted international 'Petroleum industry practice ("Notice of Discovery and its Commerciality").

In the event Contractor does not submit a Notice of Discovery and its Commerciality during the Exploration Period or if Contractor proceeds to the Additional Exploration Period, during the Additional Exploration Period, this Agreement in relation to the Contract Exploration Area shall terminate and any costs incurred by Contractor with respect to the Contract Exploration Area, including but not limited to Bonus payments, shall not be recoverable.

In the event the appraisal of existing pool/pools and/or a Discovery indicates that the natural boundary of the existing pool/pools and/or a Discovery extends to areas outside the Contract Exploration Area SOCAR shall be entitled (but not obligated) to grant the additional areas to Contractor and if granted such additional areas shall become subject to this Agreement.

7.5   <u>Development Programme</u>

25

(a)    In the event Contractor submits to SOCAR a Notice of Discovery and its Commerciality before the end of the Exploration Period or if applicable the Additional Exploration Period, Contractor shall submit the Development Programme to SOCAR for its approval no later than six (6) months after the date of such Notice of Discovery and its Commerciality, provided that in the event of a Crude Oil and Associated Natural Gas Discovery, the Development Programme shall include Contractor's commitments to start commercial production of Petroleum no later than twenty-four (24) months from the date of SOCAR's written approval of Contractor's Development Programme. SOCAR shall not unreasonably withhold its approval of the Development Programme.

In the event Contractor does not submit the Development Programme within the six (6) months period referred to above, SOCAR shall have the right to terminate this Agreement in relation to the Contract Exploration Area by giving written notice to Contractor within thirty (30) days following expiry of the said six (6) month period, and any costs incurred by Contractor with respect to the Contract Exploration Area, including but not limited to Bonus payments, shall not be recoverable.

(b)    The Development Programme shall be a long range plan for the efficient and prompt development and production of Petroleum from the Contract Exploration Area in accordance with generally accepted international Petroleum industry standards and shall include but not be limited to the following:

(i)    proposals relating to the spacing, drilling and completion of all types of wells; and

(ii)    proposals relating to the production and storage installations, and transportation and delivery facilities required for the production, storage and transportation of Petroleum; and

26

    (iii)    proposals relating to necessary infrastructure investments and use of Azerbaijan materials, products and services in accordance with Article 21.1(a); and

    (iv)    production forecasts for formation fluids for the entire Contract Exploration Area by reservoir derived from individual well forecasts and estimates of the investments and expenses involved; and

    (v)    an environmental impact and health and safety assessment and a plan for preventing environmental pollution and any environmental accident, and for steps to clean-up any pollution related to such accident; and

    (vi)    estimates of the time required to complete the phases of the Development Programme.

(c)    Within thirty (30) days of receipt of the Development Programme SOCAR may request Contractor to provide such further information as is readily available to Contractor and as SOCAR may reasonably need to evaluate the Development Programme.

(d)    Unless SOCAR requests in writing to Contractor any changes to the Development Programme within ninety (90) days of receipt thereof, the Development Programme shall be deemed approved and accepted by SOCAR. In the event that SOCAR requests any changes to the Development Programme then the Parties shall meet within fifteen (15) days of receipt by Contractor of SOCAR's written notification of requested changes and shall discuss such request. Any agreed revision to the Development Programme shall be incorporated into the Development Programme. In the event that the Development Programme has not been approved by SOCAR within sixty (60) days of the commencement of such discussion, Contractor may within a further forty (40) days commence arbitration under the Arbitration Procedure on the question as to whether or not SOCAR's approval of the Development Programme has been unreasonably withheld. If the decision of the arbitrators is that approval was withheld by SOCAR unreasonably Contractor shall be entitled to commence operations in accordance with the Development Programme in all respects as if the Development Programme had been approved by SOCAR. If Contractor shall fail to commence operations within one (1) year of the date of the arbitrators' decision SOCAR shall have the right to terminate this Agreement in relation to the Contract Exploration Area by giving Contractor notice in writing within sixty (60) days after expiry of the said period of one (1) year. If the arbitrators' decision is that SOCAR reasonably withheld approval of the Development Programme submitted by Contractor, then SOCAR shall have the right to terminate this Agreement in relation to the Contract Exploration Area by giving Contractor notice in writing within sixty (60) days after the date of the notification of the decision of the arbitrators.

(e)    Implementation of Petroleum Operations by Contractor shall be through Annual Work Programmes and Budgets, the approval of which shall be deemed to amend the Development Programme to the extent necessary.

28

(f)    Contractor may at any time submit to the Steering Committee proposals to revise the Development Programme, including the event of further Discoveries and Contractor's decision to develop such Discoveries which shall not constitute a basis for Contractor to extend the Development and Production Period. These proposals shall be consistent with the principles of efficient and optimum development and production of Petroleum in accordance with international Petroleum industry standards and shall be subject to the approval of the Steering Committee, such approval not to be unreasonably withheld.

7.6    If within twenty four (24) months from the date of approval by SOCAR of the Development Programme the Discovery development pursuant to the Development Programme has not been commenced by Contractor, then unless otherwise agreed, SOCAR shall be entitled by giving written notice to terminate this Agreement in relation to the Contract Exploration Area, and any unrecovered costs incurred by Contractor with respect to the Contract Exploration Area to the date of such notice shall not be recoverable.

## ARTICLE 8

### STEERING COMMITTEE
### FOR PROJECT MANAGEMENT
### AND ANNUAL WORK PROGRAMMES

**8.1** <u>Steering Committee for Project Management</u>

SOCAR and Contractor shall, not later than thirty (30) days from the commencement of the Development and Production Period establish the Steering Committee.

The functions of the Steering Committee shall include but not be 'limited to:

(a)   overseeing Petroleum Operations;

(b)   examining, revising and approving Contractor's Annual Work Programmes and Budgets;

(c)   overseeing the accounting of costs and expenses in accordance with the Accounting Procedure;

(d)   establishing sub-committees of the Steering Committee and reviewing the work of such sub-committees;

(e)   reviewing, revising and approving training programmes;

(f)   reviewing and approving the abandonment plan and cost of abandonment operations pursuant to Article 17.2(g).

**8.2**   The following rules shall apply with respect to the Steering Committee and meetings thereof:

(a)    The Steering Committee shall be comprised of an equal
number of members from SOCAR and Contractor. Initially the
Steering Committee shall consist of three (3) representatives
appointed by SOCAR and three (3) representatives appointed
by Contractor (one (1) representative from each Contractor
Party). A person cannot represent both SOCAR and SOA. If at
any time the number of Contractor Parties increases or
decreases the number of representatives to be appointed by
each of SOCAR and Contractor shall be increased or reduced,
as the case may be, to equal the number of Contractor Parties,
provided, however, that the number of representatives to be
appointed by each of SOCAR and Contractor shall never be
less than three (3). SOCAR and Contractor shall each be
entitled to appoint an alternate for each of their representatives,
who shall be entitled to attend in place of the designated
representatives, such alternate to be considered a representative
for all purposes at such Steering Committee meetings. SOCAR
and Contractor shall each advise the other of the names of its
representatives and their alternates within twenty (20) days
following commencement of the Development and Production
Period. Such representatives and their alternates may be
replaced by SOCAR and Contractor, respectively, upon written
notice to the other.

(b)    SOCAR and Contractor shall each have one (1) vote to cast on
any matter submitted for approval by the Steering Committee.
For this purpose, each of SOCAR and Contractor shall give
written notice to the other specifying the identity of the
individual representative (and, if desired, his alternate), who
shall be authorised to cast such vote on its behalf. Such
designated individuals may be changed from time to time upon
written notice by SOCAR or Contractor, as the case may be.
No vote cast or purported to be cast by any representative
other than said designated individuals (or, in the absence of
either, his designated alternate) shall be considered as the
official vote of either SOCAR or Contractor, as the case may
be.

With respect to the Contract Exploration Area, the Steering Committee shall not take any decisions during the Exploration Period and/or the Additional Exploration Period and until the date of approval of the Development Programme. Decisions on the implementation of Petroleum Operations during the Exploration Period, the Additional Exploration Period and until the date of approval of the Development Programme pursuant to Articles 7.2 and 7.3, shall be taken by Contractor alone.

(c)     The chairman of the Steering Committee shall be appointed by SOCAR from one of its appointed representatives to the Steering Committee and shall preside over meetings of the Steering Committee.

(d)     The secretary to the Steering Committee shall be appointed by Contractor from one of its appointed representatives to the Steering Committee and shall be responsible for:

   (i)     the production of an agenda before each meeting, such agenda to be agreed between SOCAR and Contractor; and

   (ii)    the production and circulation of minutes following each meeting, which minutes shall be agreed between the representatives of SOCAR and Contractor who are the representatives authorised to cast the votes in the Steering Committee.

(e)     Subject to the provisions of Article 8.2(b), decisions of the Steering Committee shall require the affirmative vote of both SOCAR and Contractor.

(f)     SOCAR and Contractor shall each be entitled to send advisers and experts to meetings of the Steering Committee. Unless the Steering Committee agrees, the cost of such advisors and experts in attending the meetings shall not be Cost Recoverable.

32

(g)    A quorum of the Steering Committee shall consist of at least three quarters ($^3/_4$) of the representatives from each of SOCAR and Contractor, including the two (2) individuals who have been designated by SOCAR and Contractor, respectively, as authorised to cast votes (or their alternates).

(h)    The Steering Committee will meet at least two (2) times in a Calendar Year. Meetings shall be held in Baku, unless otherwise agreed. In the event that SOCAR and Contractor agree, the Steering Committee can take decisions without holding an actual meeting; provided that in the event of a teleconference or video conference the quorum requirements set forth in Article 8.2(g) have been complied with and in the event of a meeting via exchange of letters, faxes, or telexes, such letters, faxes and telexes are copied to all Parties. Such decisions shall be recorded in writing promptly thereafter and signed by the representatives of SOCAR and Contractor who are authorised to cast the respective votes of SOCAR and Contractor. Except in an emergency, all Parties shall be given not less than fifteen (15) days advance notice of each meeting, regardless of whether the meeting is in person, by teleconference, by letter, by fax, or otherwise, so that each Party may have the opportunity to contribute to the decision-making process.

(i)    SOCAR and Contractor shall each have the right to call additional meetings of the Steering Committee upon fifteen (15) days prior written notice to each other.

**8.3**    <u>Annual Work Programmes and Budgets</u>



33

(a)      Not more than thirty (30) days following the formation of the Steering Committee and thereafter at least three (3) months before the beginning of each Calendar Year during the Development and Production Period, Contractor shall prepare and submit, or cause to be prepared and submitted, to the Steering Committee for approval an Annual Work Programme together with the related Budget in respect of the Petroleum Operations Contractor proposes to be carried out in such Calendar Year. The Steering Committee shall meet within thirty (30) days of receipt of the Annual Work Programme and Budget to consider same and any revisions thereto and to approve the Annual Work Programme and the Budget in its final form. It is agreed by SOCAR and Contractor that knowledge acquired as the work proceeds or from certain events may justify changes to the details of the Annual Work Programme; thus Contractor may at any time propose to the Steering Committee an amendment to the Annual Work Programme and Budget. Except as provided in this Article 8.3 and in Article 8.4, Contractor shall not conduct any operations which deviate materially from the applicable Annual Work Programme and Budget without the prior consent of the Steering Committee. If necessary to carry out an Annual Work Programme, Contractor is authorised to make expenditures during the relevant Calendar Year that are in excess of the Budget adopted threrefor so long as an excess expenditure does not exceed ten (10) percent of the Budget item; provided that the cumulative total of all excess expenditures for a Calendar Year does not exceed ten (10) percent of total Budget, unless approved by the Steering Committee which approval shall not be withheld where the expenditures have been demonstrated to be reasonable and necessary.

34

(b)     In the event the Annual Work Programme and Budget has not been approved by the Steering Committee in the case of the first Annual Work Programme and Budget within sixty (60) days following the formation of the Steering Committee and in the case of each subsequent Annual Work Programme and Budget by the first day of the Calendar Year to which it relates, Contractor shall be entitled (but not obligated) to carry out Petroleum Operations in accordance with some or all of its proposed Annual Work Programme and Budget until such time as the Annual Work Programme and Budget is agreed by the Steering Committee or any dispute relating to the Annual Work Programme and Budget has been resolved by reference to arbitration in accordance with the Arbitration Procedure.

As soon as agreement on an Annual Work Programme and Budget is reached by the Steering Committee or the decision of the arbitrators is rendered, Contractor shall amend the then current and/or next following Annual Work Programme and Budget, as appropriate, to conform with such agreement or decision; provided that Contractor shall not be obligated to undo work already performed, may complete any work in progress to the extent Contractor deems necessary and that all costs incurred by Contractor in performing Petroleum Operations under its proposed Annual Work Programme and Budget shall be deemed to be Petroleum Costs subject to Cost Recovery under this Agreement. The foregoing notwithstanding, Contractor shall not be entitled to Cost Recovery of any costs incurred under any portions of the proposed Annual Work Programme as identified in the written minutes of the Steering Committee meeting at which the proposed Annual Work Programme was considered and which were not approved by the Steering Committee and for which the arbitration award is issued in favour of SOCAR; except that in all cases Contractor shall be entitled to Cost Recovery of the following items:

(i)     ongoing commitments of Contractor, including contracts entered into prior to the initiation of any such arbitration; and

(ii)    work Contractor considers necessary for the protection of the reservoir and equipment and facilities; and

35

(iii)    work Contractor considers necessary for the protection
of the environment, health and safety.

### 8.4    Emergency Measures

Notwithstanding any provision of this Agreement to the contrary, in
the case of an accident or other emergency (or anticipated
emergency), Contractor shall take all measures reasonably considered
necessary by Contractor for the protection of life, health, the
environment and property. The costs of taking such measures shall be
included automatically as an approved addition to the then current
Budget and shall be deemed to be Petroleum Costs subject to Cost
Recovery under this Agreement, unless such accident or other
emergency (or anticipated emergency) was the result of Contractor's
Willful Misconduct.

## ARTICLE 9

## OPERATING COMPANY, PERSONNEL
## AND TRAINING

### 9.1    Operating Company

The Contractor Parties shall as soon as practicable after the Effective
Date form a non-profit making joint Operating Company owned
proportionately by the Contractor Parties. The Contractor Parties shall
be represented in the board of directors with equal number of
representatives. The Operating Company shall employ personnel
seconded from all Contractor Parties and such personnel shall work as
an integrated team under the management of the Operating Company.

The Operating Company may be incorporated or created outside of
the Azerbaijan Republic but shall be registered to do business in the
Azerbaijan Republic in accordance with the Azerbaijan law.

Contractor shall have, upon the prior agreement of SOCAR, the right
to substitute the Operating Company, from time to time, by
appointing in writing another Operating Company, provided that such
substitute Operating Company shall be formed by an Affiliate of one
or more of the Parties. Contractor shall ensure the proper and orderly
handover of responsibilities from an outgoing Operating Company to
an entering Operating Company.

### 9.2    Responsibilities of Operating Company

The responsibilities of the Operating Company shall be the
management, co-ordination, implementation and conduct on behalf of
Contractor of the day to day Petroleum Operations, and such other
functions, as may be delegated to it from time to time by Contractor.

The Operating Company shall have, to the extent authorised by
Contractor, the right to subcontract any day to day work required to
implement any Annual Work Programme.

### 9.3    Organisation



37

The Operating Company personnel shall be kept to the minimum practicable number, and shall include management personnel, technical professionals, operating and maintenance personnel and administrative personnel required to carry out the day to day Petroleum Operations on behalf of Contractor.

**9.4** **Decisions**

Decisions regarding the conduct of Petroleum Operations shall be made by the Contractor Parties in accordance with the voting mechanism agreed among them and the Parties agree that during the Development and Production Period the decisions of the Contractor management committee shall at the time of voting require the affirmative vote of the Contractor Parties owning collectively sixty (60) percent of the Participating Interest under the Agreement and participating interest under the joint operating agreement, provided that the Contractor Parties shall develop special provisions for decisions to be taken on the matters regarding the implementation of the work to be carried by the Other Contractor Parties under Article 3.5 of this Agreement. SOA as a Contractor Party shall participate at all decision levels in the same way as the other Contractor Parties, including but not limited to the Contractor management committee.

**9.5** **Procedures**

The Operating Company shall be free to adopt such policies, practices and procedures as it deems necessary for the conduct of Petroleum Operations in accordance with this Agreement.

**9.6** **Status of Operating Company**

The Operating Company shall be entitled to all of the benefits, waivers, indemnities and exemptions accorded to the Contractor Parties under this Agreement. The Operating Company shall own no assets or equipment (though it shall have the right to freely use assets or equipment owned or used by the Contractor Parties in conducting Petroleum Operations on behalf of the Contractor Parties); shall act only as operator hereunder upon Contractor Parties' instructions and directions and shall not be entitled to any share of Petroleum produced and shall neither make a profit nor incur a loss. The Operating Company shall record all financial flows or other transactions of the Contractor Parties as passing through to the Contractor Parties in accordance with this Agreement as though the Operating Company did not exist as a commercial entity, and for all purposes the amount of its Taxable Profit shall be zero (0). During the Development and Production Period Contractor shall bear all costs of the Operating Company related to the conduct of internal inspections, inventories, audits, reorganisations, structural changes and the like and such costs shall not be Cost Recoverable unless the conduct of such internal inspections, inventories, audits, reorganisations, structural changes and the like is approved by the Steering Committee.

9.7    <u>Personnel</u>

(a)    Notwithstanding the provisions of this Article 9.7 to the contrary, Contractor shall employ to the Operating Company personnel of the Oil and Gas Production Division "Salyanneft" (OGPD), being structural unit of SOCAR, dismissed as the result of liquidation of the OGPD after the Effective Date. Such employment shall be in accordance with the existing legislation of the Azerbaijan Republic.

(b)    Contractor and its Sub-contractors and the Operating Company and its Sub-contractors, shall be free to employ such personnel as in Contractor's and its Sub-contractors' and the Operating Company's and its Sub-contractors' respective opinions are required for the purpose of carrying out Petroleum Operations.



(c)     Contractor shall, to the extent reasonably practical, require the Operating Company to give preference, as far as is consistent with efficient operations, to employing citizens of the Azerbaijan Republic in the performance of Petroleum Operations, provided that such citizens have the required knowledge, qualifications and experience. Such citizens shall be eligible for training in accordance with Article 9.8. With respect to the employment of citizens of the Azerbaijan Republic, Contractor agrees as follows:

(i)     the Operating Company shall provide SOCAR from time to time with a list showing the numbers and job specifications for citizens of the Azerbaijan Republic which it estimates that it may require. In addition, the Operating Company shall require its Sub-contractors to provide SOCAR from time to time with a list showing the numbers and job specifications for its employees that they estimate they may require. The number of positions and qualifications required may be modified by the Operating Company during the period said list is under review by SOCAR, due to business need (as determined by Operator) or as a result of one or more positions becoming filled by the internal reassignment of Azerbaijani citizens already employed by the Operating Company or its Sub-contractors;

(ii)    SOCAR shall, within thirty (30) days of receipt of such list, provide the Operating Company and such Sub-contractors with a list of candidates recommended by SOCAR;

(iii)   persons from the list provided by SOCAR shall enjoy a priority consideration for employment by the Operating Company and the Sub-contractors if they meet the requirements of the Operating Company or such Sub-contractors;

(iv) in the event that vacant positions remain in the Operating Company or Sub-contractors' organisations, SOCAR shall within two (2) weeks of receipt of vacant positions, provide the Operating Company or such Sub-contractors an additional list of candidates recommended by SOCAR and if vacant positions still remain the Operating Company or such Sub-contractors shall be entitled to fill these vacant positions with such citizens of the Azerbaijan Republic as the Operating Company or such Sub-contractors choose;

(v) in the event that the candidates selected independently by the Operating Company and such Sub-contractors include SOCAR employees, then such persons shall be hired by the Operating Company or such Sub-contractors after consultation with SOCAR;

(vi) overall target manning levels of citizen employees of the Azerbaijan Republic pertaining to Petroleum Operations shall be as follows:

**Citizens of the Azerbaijan Republic**

**From the Effective Date**

| | |
|---|---|
| Professionals | not less than 50% |
| Non-professionals | not less than 80% |

**Five (5) years after the Effective Date**

| | |
|---|---|
| Professionals | not less than 90% |
| Non-professionals | not less than 95% |



41

(d)    Subject to Article 9.7(c), Contractor, Operating Company and any Sub-contractors are hereby authorised and shall be free, throughout the term of this Agreement, to determine the number and selection of all employees to be hired by them in connection with the conduct of Petroleum Operations. All citizens of the Azerbaijan Republic hired by Contractor, the Operating Company and any Sub-contractors shall be hired pursuant to written employment contracts which shall specify the hours of work required of the employee, the compensation and benefits to be paid or furnished by the employer and all other terms of employment. Such employees may be located wherever Contractor, the Operating Company or Sub-contractors deem appropriate in connection with the Petroleum Operations in accordance with such written employment contracts entered into with them. Contractor, the Operating Company and Sub-contractors shall be free to implement recruitment, dismissal, performance review and incentive compensation programmes and practices (both with respect to foreign expatriate employees and citizens of the Azerbaijan Republic) that are customary in international Petroleum operations and in Contractor's, the Operating Company's and Sub-contractor's experience and judgement are best able to promote an efficient and motivated workforce.

**9.8**    <u>Training</u>

Contractor shall provide training (including retraining) for citizens of the Azerbaijan Republic with respect to the Petroleum Operations. Expenditures by Contractor pursuant to this Article 9.8 shall be approved as part of the relevant Annual Work Programme and Budget and shall be included as Petroleum Costs, however the aforesaid expenditures less than two hundred thousand (200,000) Dollars in any year shall not be Cost Recoverable. Expenditures in excess of two hundred thousand (200,000) Dollars in any year shall be included as Petroleum Costs and shall be Cost Recoverable.



## ARTICLE 10

## REPORTS AND ACCESS TO PETROLEUM
## OPERATIONS

### 10.1   Reports and Records

Contractor shall keep and submit reports and records of Petroleum Operations as follows:

(a)   Contractor shall record, in an original or reproducible form of good quality and on tape or other media where relevant, all geological and geophysical information and data relating to the Contract Area obtained by Contractor in the course of conducting Petroleum Operations thereon and shall deliver a copy of all such information and data, including the interpretation thereof and logs and records of wells, and any other information obtained by Contractor consistent with generally accepted international Petroleum industry standards, to SOCAR as soon as practicable after the same has come into the possession of Contractor.

(b)   Contractor shall keep logs and records of the drilling, deepening, plugging or abandonment of wells consistent with generally accepted international Petroleum industry practice and containing particulars of:

(i)    the strata through which the well was drilled;

(ii)   the casing, drill pipe, tubing and down-hole equipment run in the well and modifications and alterations thereof;

(iii)  Petroleum, water and valuable mineral resources encountered;

and any other information consistent with generally accepted international Petroleum industry standards.

43

(c)    The information required by Article 10.1(b) above shall be submitted to SOCAR in the form of well completion reports within ninety (90) days from completion of the well in question.

(d)    Contractor may if necessary remove from the Azerbaijan Republic, for the purpose of laboratory examination or analysis, petrological specimens (including cores and cuttings) or samples of Petroleum found in the Contract Area and characteristic samples of the strata or water encountered in a well and seismic data on tape or other media. Upon request, Contractor will provide SOCAR with copies or equivalent samples and specimens of the materials which the Contractor proposes to remove from the Azerbaijan Republic.

(e)    Contractor shall supply to SOCAR:

    (i)    daily reports on drilling operations and weekly reports on field geophysical surveys as soon as they are available;

    (ii)    within fifteen (15) days after the end of each Calendar Quarter, a report on the progress of Petroleum Operations during the preceding Calendar Quarter covering:

        (1)    description of the Petroleum Operations carried out and the factual information obtained including Petroleum production data from the Contract Area overall and on a well by well basis; and

        (2)    a description of the area in which Contractor has operated; and

        (3)    a map indicating the location of all wells and other Petroleum Operations;

44

    (iii)    within three (3) months of the end of each Calendar Year, an annual report summarising the matters specified in paragraph (ii) above for the preceding Calendar Year;

    (iv)    reports on completion of major elements of Petroleum Operations or unforeseen events and other reports requested by the Steering Committee. Additionally Contractor will inform SOCAR of all discoveries other than of Petroleum, such as discoveries of non-Petroleum natural resources.

The daily and weekly reports required to be submitted to SOCAR pursuant to Article 10.1(e)(i) shall be submitted in the original language of the reports and all other reports and records required to be submitted to SOCAR pursuant to this Article 10.1 shall be submitted to SOCAR in the English and Azeri languages.

## 10.2   Access to Petroleum Operations

Duly authorised representatives of SOCAR may on not less than three (3) days notice in writing inspect at justified intervals and at reasonable times work, facilities, equipment and materials relating to the Petroleum Operations, provided that such inspection shall not unreasonably interfere with or delay the conduct of Petroleum Operations.



## ARTICLE 11

### USE OF LAND

SOCAR shall make available to Contractor, at no cost to Contractor, the use of any land under its control as necessary to carry out Petroleum Operations, (provided such use by Contractor does not interfere unreasonably with SOCAR's use thereof and further provided that if such use by Contractor results in expense for SOCAR, Contractor shall reimburse SOCAR for such expense, without creating any profit directly or indirectly for SOCAR), and SOCAR shall within the full limits of its authority use its best lawful endeavours to make available, at no cost to Contractor, all other land necessary to carry out Petroleum Operations including, but not limited to, the construction, laying, operating and maintaining of onshore pipelines, cables and equipment. Contractor shall have the right to construct and maintain, above and below any such lands, the facilities necessary to carry out Petroleum Operations. Land allocation and location of facilities constructed by Contractor on such land shall be in accordance with Azerbaijan legislation regarding land use restrictions, except as may be modified by this Agreement.

## ARTICLE 12

## USE OF FACILITIES

### 12.1   SOCAR Facilities

Contractor and the Operating Company shall be granted the exclusive right to use for Petroleum Operations, without charge by SOCAR, the capital assets (including but not limited to production equipment, vehicles, wells, pumps, storage facilities, tools, generators, compressors, pipelines, offices, warehouses, buildings, rigs, yards, roads, infrastructure, radios, tubular goods, supplies, materials, facilities, equipment and facilities for social purposes) which were on the books of OGPD before its liquidation, provided that SOCAR shall retain the right of ownership to such capital assets.

In the event that Contractor or the Operating Company materially refurbishes, upgrades or improves any non-OGPD facilities that are under SOCAR's direct or indirect ownership or control, including but not limited to infrastructure, rigs, means of transportation, supply bases and warehouses, then SOCAR shall ensure that Contractor has prior right to use such facilities as may be necessary for the purpose of carrying out Petroleum Operations.

Contractor shall cooperate with SOCAR to inventory all capital assets on the books of OGPD or within the Contract Area and to make an orderly transition from use of capital assets by OGPD to use of capital assets by the Operating Company.

### 12.2   SOCAR Assistance

47

(a)    SOCAR shall within the full limits of its authority use its best lawful endeavours with respect to Governmental Authorities and Third Parties to provide Contractor access for its share of Petroleum to all necessary transportation, treatment and export facilities and infrastructure in the Azerbaijan Republic on terms no less favourable to Contractor than those granted to, or agreed with, any other bona fide arm's length user of such facilities and infrastructure.

(b)    SOCAR shall within the full limits of its authority use all lawful reasonable endeavours, with respect to Governmental Authorities and Third Parties, to assist Contractor in obtaining such rights, privileges, authorisations, approvals and other agreements from authorities and jurisdictions, outside the territory of the Azerbaijan Republic as Contractor shall reasonably deem necessary for Petroleum Operations and/or as may be required by such authorities and jurisdictions, but shall not be responsible if such rights, privileges, authorisations and approvals are not obtained. Such agreements may include, but need not be limited to, such matters as export pipeline rights of way and operation rights, permits and undertakings with respect to the transhipment, storage or staging of Petroleum produced and saved from the Contract Area, materials, equipment and other supplies destined to or from the territory of the Azerbaijan Republic, and exemptions from national, local and other taxes, transit fees, and other fees and charges on Petroleum Operations being conducted in such other jurisdictions.



(c)     SOCAR shall within the full limits of its authority use all reasonable lawful endeavours with respect to Governmental Authorities and Third Parties, and shall be obligated with respect to its Affiliates, joint ventures or enterprises in which it has an interest and the right to control, manage or direct the action of such companies, ventures or enterprises, to ensure that Contractor has access to inter alia construction and fabrication facilities, supply bases and warehousing, goods, services and means of transportation in the Azerbaijan Republic provided that those items are not subject to prior obligations to Third Parties and that Contractor's use thereof does not interfere with the existing operations of SOCAR and/or any Third Party. As used herein, "control" shall mean the ownership of more than fifty (50) percent of the shares authorised to vote at a general meeting of shareholders, or the ability to pass or procure the passing of a decision (whether by casting of votes or otherwise) at a general meeting of shareholders, or at any meeting of the executive or management body, of the company, venture or enterprise. Such access shall be:

(i)     with respect to facilities and services of Third Parties, on terms which are no less favourable to Contractor than those granted or agreed with any other bona fide arm's length user of such facilities and services; and

(ii)    with respect to facilities and services of SOCAR and such Affiliates, joint ventures or enterprises in which SOCAR has an interest and the right to control, manage or direct the action thereof, at rates commensurate with the quality and efficiency of such facilities and services, which rates shall be the same as are available to SOCAR and/or such Affiliates, joint ventures or enterprises and as regard other terms no less favourable to Contractor than those granted to or agreed with SOCAR and/or such Affiliates, joint ventures or enterprises.

**12.3    Contractor Facilities**



49

Contractor shall be responsible for the maintenance and repair of all facilities controlled and operated by Contractor in connection with the Petroleum Operations ("Contractor Facilities"). Fees from Third Parties' access to Contractor Facilities shall be credited to the Petroleum Operations Account. SOCAR shall have the right to use excess capacity in Contractor Facilities provided such use does not interfere with or adversely affect Petroleum Operations. Third Parties may use such excess capacity on terms agreed with Contractor. Prior to Zero Balance the priority of such use of Contractor Facilities shall be first Contractor, second Third Parties, and finally SOCAR. SOCAR shall pay a mutually agreed fee for such use to be credited to the Petroleum Operations Account. After Zero Balance the priority shall be first Contractor, second SOCAR and finally Third Parties. SOCAR's use after Zero Balance shall be free of charge, except that maintenance of Contractor Facilities, for the time being not used by Contractor and being utilised exclusively by SOCAR, shall be on terms to be mutually agreed. Notwithstanding anything to the contrary in this Agreement, Contractor shall have the right to dispose of equipment and facilities which are either obsolete or are nearing the end of their useful economic life. Contractor shall notify SOCAR of its intention to dispose of any such equipment and facilities (except in the case of fixed assets to which the provisions of Article 17.5(a) shall apply). Unless SOCAR elects, within thirty (30) days to assume responsibility for and take delivery thereof, Contractor shall be free to dispose of any such equipment and facilities at the best price obtainable. Funds from such sales will be credited to the Petroleum Operations Account, and costs of disposal will be charged as Operating Costs. Notwithstanding any provision herein to the contrary, SOCAR and Contractor shall have equal priority to capacity in Contractor Facilities to transport Petroleum produced from the Contract Area in proportion to their rights to take Petroleum under this Agreement.

## ARTICLE 13

### CONTRACTOR'S RECOVERY OF PETROLEUM COSTS AND PRODUCTION SHARING

**13.1 General Provisions**

 50

Contractor's Cost Recovery and Profit Petroleum share shall be separately determined for Petroleum Operations performed in and related to the Contract Rehabilitation Area and for Petroleum Operations performed in and related to the Contract Exploration Area. In this regard, any reference to Petroleum, Crude Oil or Non-associated Natural Gas means such Petroleum, Crude Oil or Non-associated Natural Gas lifted from the Contract Rehabilitation Area or from the Contract Exploration Area respectively. Any reference to Petroleum Costs, Operating Costs and Capital Costs means such Petroleum Costs, Operating Costs and Capital Costs which have been incurred in connection with the Petroleum Operations performed in and related to the Contract Rehabilitation Area or the Contract Exploration Area respectively.

### 13.2    Use of Petroleum for Petroleum Operations

Contractor shall have the right to use free of charge Petroleum produced from the Contract Area for Petroleum Operations in accordance with generally accepted international Petroleum industry practice, including but not limited to reinjection to preserve the pressure of Petroleum reservoirs in the Contract Area. Contractor shall endeavour to minimise use of Petroleum for Petroleum Operations. For planning purposes Contractor shall provide in the Annual Work Programme an estimate of the amount of Petroleum it anticipates will be used for the optimum implementation of Petroleum Operations. Without prejudice to the said above, if during the implementation of the Annual Work Programme Contractor estimates that it will use more than ten (10) percent over and above the amount estimated, Contractor shall submit its proposals for the revised estimate to the Steering Committee for its review and approval.

### 13.3    Cost Recovery for Petroleum Operations related to the Contract Rehabilitation Area



51

(a) Contractor shall be entitled to the recovery of its Petroleum Costs related to the Contract Rehabilitation Area as follows:

    (i) all Operating Costs shall first be recovered from Total Production;

    (ii) all Capital Costs shall then be recovered from a maximum of fifty (50) percent of Crude Oil and fifty (50) percent of Non-associated Natural Gas remaining out of Total Production after deduction of Crude Oil and Non-associated Natural Gas required to recover Contractor's Operating Costs ("Capital Cost Recovery Petroleum").

(b) Accounting of costs to be recovered in accordance with Article 13.3(a), including the right of audit, shall be in a manner consistent with the Accounting Procedure.

(c) Cost Recovery shall be calculated on a Calendar Quarter basis.

(d) (i) At the end of each Calendar Quarter, Finance Costs shall be applied to any unrecovered Capital Costs;

    (ii) Finance Costs in respect of unrecovered Capital Costs for each Calendar Quarter shall, at the end of each Calendar Quarter, be aggregated with the unrecovered balance of Capital Costs at that date and thereafter be recovered as Capital Costs.

(e) Notwithstanding the foregoing, Finance Costs shall not be applied to any unrecovered Capital Costs before the Calendar Quarter following such Calendar Quarter in which the level of daily rate of Crude Oil produced from the Contract Rehabilitation Area within ninety (90) consecutive days is at least one point five (1.5) times the average daily rate of Crude Oil produced from the Contract Rehabilitation Area in 1997, as defined in the Local Market Oil Programme.



52

(f)     Contractor shall have the continuing right to carry over to subsequent Calendar Quarters accumulated Petroleum Costs which are Cost Recoverable but which have not been recovered in previous Calendar Quarters.

(g)     To the extent that the unrecovered accumulated Capital Costs incurred or carried forward in any Calendar Quarter are less than the value of the Capital Cost Recovery Petroleum available for Cost Recovery purposes during such Calendar Quarter, then the unused Capital Cost Recovery Petroleum shall be treated as additional Profit Petroleum.

### 13.4    Cost Recovery for Petroleum Operations related to the Contract Exploration Area

(a)     Contractor shall be entitled to the recovery of its Petroleum Costs related to the Contract Exploration Area as follows:

     (i)     all Operating Costs shall first be recovered from Total Production;

     (ii)     all Capital Costs, as amortised at a rate of twenty (20) percent per year (straight-line basis) shall then be recovered from a maximum of fifty (50) percent of Crude Oil and fifty (50) percent of Non-associated Natural Gas remaining out of Total Production after deduction of Crude Oil and Non-associated Natural Gas required to recover Contractor's Operating Costs ("Capital Cost Recovery Petroleum").

(b)     Accounting of costs to be recovered in accordance with Article 13.4(a), including the right of audit, shall be in a manner consistent with the Accounting Procedure.

(c)     Cost Recovery shall be calculated on a Calendar Quarter basis.



(d)    (i)    At the end of each Calendar Quarter, Finance Costs shall be applied to any unrecovered Capital Costs and Operating Costs;

       (ii)    Finance Costs in respect of unrecovered Operating Costs for each Calendar Quarter shall, at the end of each Calendar Quarter, be aggregated with the unrecovered balance of Operating Costs at that date and thereafter be recovered as Operating Costs;

       (iii)    Finance Costs in respect of unrecovered Capital Costs for each Calendar Quarter shall, at the end of each Calendar Quarter be aggregated with the unrecovered balance of Capital Costs at the date and thereafter be recovered as Capital Costs.

(e)    Notwithstanding the foregoing, Finance Costs shall not be applied to any unrecovered Petroleum Costs before the Commencement Date of Commercial Production.

(f)    Contractor shall have the continuing right to carry over to subsequent Calendar Quarters accumulated Petroleum Costs which are Cost Recoverable but which have not been recovered in previous Calendar Quarters.

(g)    To the extent that the unrecovered accumulated Capital Costs incurred or carried forward in any Calendar Quarter are less than the value of the Capital Cost Recovery Petroleum available for Cost Recovery purposes during such Calendar Quarter, then the unused Capital Cost Recovery Petroleum shall be treated as additional Profit Petroleum.

### 13.5 Transfer of Title



Cost Recovery by Contractor shall be achieved by transferring to Contractor title by SOCAR at the Delivery Point to quantities of Crude Oil and Non-associated Natural Gas of equivalent value (as determined pursuant to Articles 16.2 and 16.3) to the Petroleum Costs to be recovered in accordance with Articles 13.3 and 13.4.

### 13.6    Profit Petroleum

The balance of Total Production from the Contract Rehabilitation Area and the Contract Exploration Area respectively, remaining after deducting the quantities of Crude Oil and Non-associated Natural Gas necessary to enable recovery of Operating Costs and the portion of Capital Costs Recovery Petroleum used to recover accumulated 'Capital Costs for the Contract Rehabilitation Area (as provided in Article 13.3), and for the Contract Exploration Area, (as provided in Article 13.4 above) ("Profit Petroleum"), shall be calculated on a Calendar Quarter basis and shall be shared between SOCAR and Contractor according to the R Factor model below.

Beginning at the Effective Date the value of the R Factor in respect of Calendar Quarter (n+1) shall be determined at the end of Calendar Quarter (n) separately for Petroleum Operations performed in and related to the Contract Rehabilitation Area and for Petroleum Operations performed in and related to the Contract Exploration Area in accordance with the procedure below:

$$\text{R Factor} (n + 1) = \frac{\Sigma (CCRn + FCn + PPLn)}{\Sigma (CCSn)}$$

Where:

CCRn    means Contractor's Capital Costs recovered in the $n$th Calendar Quarter;

FCn    means Contractor's Finance Costs recovered in the $n$th Calendar Quarter;

Capital Costs incurred in the $n$th

Contractor's share of Profit Petroleum
ndar Quarter;

nber of the relevant Calendar Quarter;

ve arithmetic sum of the items to the
ol up to and including Calendar Quarter

l to the Profit Petroleum Sharing Table
plit between SOCAR and Contractor of
Quarter (n+1).

m Sharing Table

| CAR Share (%) | Contractor Share (%) |
|---|---|
| 50.0 | 50.0 |
| 60.0 | 40.0 |
| 70.0 | 30.0 |
| 80.0 | 20.0 |
| 85.0 | 15.0 |
| 87.5 | 12.5 |
| 90.0 | 10.0 |

troleum

Profit Petroleum shall be out of Crude
ural Gas and shall be transferred to
it.



## ARTICLE 14

## LOCAL MARKET OIL

### 14.1   Contractor's Obligation for Sale of Local Market Oil

(a)   Contractor shall have the obligation to sell annually to SOCAR an amount of Crude Oil, for purposes of this Agreement defined as "Local Market Oil", under the Local Market Oil Programme on a quarterly schedule agreed between the Parties calculated in accordance with the procedure below:

$$LMO(n) = LMO(n-1) \times (1 - ADR)$$

. Where:

LMO(n)          means the amount of Local Market Oil to be delivered by Contractor to SOCAR in the "$n$"th Calendar Year;

LMO(n - 1)    means the amount of Local Market Oil delivered by Contractor to SOCAR in the "$n$th - 1" Calendar Year. For the first year following the Effective Date LMO (n - 1) is determined as total amount of Crude Oil lifted from the Contract Rehabilitation Area in the year preceding the Effective Date;

ADR              means the average decline rate of Crude Oil production for the period from 1992 to 1997.

ADR is determined according to the following formula:

$$ADR = \frac{(1-Q_{93}/Q_{92})+(1-Q_{94}/Q_{93})+(1-Q_{95}/Q_{94})+(1-Q_{96}/Q_{95})+(1-Q_{97}/Q_{96})}{5}$$

where:

Q92, Q93, Q94, Q95, Q96, Q97 - annual production of Crude Oil from the Kursangi and Karabagli fields respectively, for 1992, 1993, 1994, 1995, 1996, 1997.

(b)    Each of the Contractor Parties shall quarterly sell to SOCAR at the Delivery Point a portion of Local Market Oil in proportion to the total amount of Crude Oil received by such Contractor Party at the Delivery Point in a current Calendar Quarter.

(c)    SOCAR shall pay to each Contractor Party the value of Local Market Oil sold in agreed currency and at the price of Crude Oil established by the Governmental Authorities of the Azerbaijan Republic for local market.

### 14.2  Underlift of Local Market Oil

(a)    In the event of failure by Contractor of its obligations set forth in Article 14.1 ("Shortfall") during the Calendar Quarter according to the schedule agreed by the Parties which constitutes a Material Breach by Contractor of its obligations, the Shortfall shall be paid back by Contractor in full with Crude Oil of similar quality or any other quality agreed by SOCAR in the next month following such Calendar Quarter.

(b)    In the event of Shortfall within two (2) consecutive Calendar Quarters and failure by Contractor to pay back the Shortfall, SOCAR shall have the right to terminate this Agreement with respect to the Contract Rehabilitation Area in accordance with the procedure and terms set out in Article 32.1(a).

14.3    Notwithstanding any other provision of Article 14, SOCAR shall be entitled at its sole discretion to suspend the purchase of Local Market Oil. In such case, SOCAR shall notify Contractor in writing within ninety (90) days before the Calendar Quarter in which SOCAR desires to suspend the purchase of Local Market Oil. If SOCAR elects to resume the purchase of Local Market Oil thereafter, SOCAR shall notify Contractor in writing within ninety (90) days before the Calendar Quarter in which SOCAR desires to resume the purchase of Local Market Oil.



14.4    If any amount payable by SOCAR pursuant to Article 14.1(c) remains unpaid for two (2) consecutive Calendar Quarters, then Contractor shall be entitled to cease sales of Local Market Oil to SOCAR pursuant to Article 14.1(b). Upon SOCAR paying the outstanding amount, Contractor shall not more than ninety (90) days thereafter resume sales of Local Market Oil to SOCAR under the Local Market Oil Programme.



## ARTICLE 15
## TAXATION

### 15.1 General

(a) As a condition to Contractor's obligations under this Agreement, except for the Profit Tax obligation described in this Article 15, the Contractor Parties shall not be subject to any Taxes of any nature whatsoever arising from or related, directly or indirectly, to Hydrocarbon Activities.

(b) It is acknowledged that Double Tax Treaties shall have effect to give relief from Taxes.

(c) For the purposes of this Article 15 the following expressions shall have the meanings ascribed to them below:

(i) "State Budget" means consolidated Republican and local budgets.

(ii) "Fixed Assets" shall include all assets which it is usual to include in the Contractor Party's tax balance sheet under the heading of fixed or intangible asset, the total value of each of which exceeds a limit and has an anticipated useful life of more than one (1) year and the total value of each asset exceeds the following limit: the limit for the Calendar Year in which this Agreement is executed shall be five thousand Dollars (US $5,000) and subsequently the limit for each Calendar Year shall be the limit of the preceeding Calendar Year increased by four percent (4%).

60

(iii)   "Hydrocarbon Activities" means all Petroleum Operations and all other activities carried out in connection with this Agreement by the Contractor Party, directly or through the Operating Company, relating to the rehabilitation, exploration, development and production of the Contract Area whether such activities are performed in the Azerbaijan Republic or elsewhere. Each Contractor Party shall maintain separate books and accounts for its respective Hydrocarbon Activities.

(iv)   "Tax Inspectorate" means the Main State Tax Inspectorate of the Azerbaijan Republic or any successor thereto appointed by the Main State Tax Inspectorate of the Azerbaijan Republic.

(v)   "Profit Tax Rate" is a rate of thirty two (32) percent which is the applied Profit Tax Rate existing in Azerbaijan Republic on the day of execution of this Agreement and which shall remain fixed for the duration of this Agreement.

### 15.2  Profit Tax

(a)   Each Contractor Party shall be severally liable for Profit Tax in respect of its Hydrocarbon Activities in accordance with the Law of the Azerbaijan Republic on Taxation of Profit and Certain Types of Income of Legal Entities, dated 24 December 1996, as enacted, and as generally applicable and in force in the Azerbaijan Republic, and as amended by the provisions of this Agreement ("Profit Tax"). In the event of any conflict between the provisions of such Law and those of this Agreement, the provisions of this Agreement shall govern. Each Contractor Party shall be liable for payment of Profit Tax in connection with its business activities in the Azerbaijan Republic that are not related to Hydrocarbon Activities, under the applicable laws and regulations of the Azerbaijan Republic.



(b)     It is specifically acknowledged that the provisions of this Article 15 shall apply individually to each Contractor Party and govern the individual liability of a Contractor Party for the Profit Tax which shall be based on such Contractor Party's separate share of the items of Sales Income and Other Income and Deductions, as written in a separate accounting book as provided in Article 15.1(c)(iii).

(c)     SOCAR shall in respect of each Calendar Year pay on behalf and in the name of each of the Contractor Party's Profit Tax to the State Budget in Dollars including estimated Profit Tax, and any interest, fines or penalties with respect thereto which is attributable to the failure to pay any such Profit Tax or estimated Profit Tax when it is due (except interest resulting from a Contractor Party's failure to prepare a required return by the due date therefor). SOCAR hereby guarantees to Contractor Parties that payment of each of Contractor Party's Profit Tax to the State Budget including any interest, fines or penalties as aforesaid, shall have first priority upon the proceeds of sale of Petroleum to which SOCAR is entitled under this Agreement. SOCAR shall cause the Tax Inspectorate to issue to the appropriate Contractor Party official receipts for such payments as provided for in Article 15.3(f). Upon request of any Contractor Party, SOCAR shall provide to such Contractor Party within ten (10) days of such request a document (in a form acceptable to all Contractor Parties) confirming direct evidence of the actual transfer of funds to the State Budget in satisfaction of SOCAR's obligation as described in the preceding sentence. For purposes of computing the liability, if any, of SOCAR for Taxes assessed on SOCAR's income or profits, SOCAR shall not be entitled to credit against its tax liability the Profit Tax paid by SOCAR on behalf and in the name of each of the Contractor Parties pursuant to this Article 15.2(c). SOCAR shall be entitled to receive and retain any Profit Tax refunds (other than refunds of Profit Tax, interest, and penalty sanctions paid by a Contractor Party) on behalf and in the name of each of the Contractor Parties and shall provide to the appropriate Contractor Party a statement showing that any such refund has been received.

(d)     (i)     On not less than thirty (30) days written notice each Contractor Party shall have the right at any time to have the payment by SOCAR of that Contractor Party's Profit Tax liability from funds generated by SOCAR's commercial activities for any Calendar Year audited by a firm of internationally recognised independent accountants selected by the Contractor Party. Contractor Party shall bear the costs of such audit and such cost shall not be Cost Recoverable. Such audit may not relate to a Calendar Year which has been finally and conclusively determined in accordance with the procedures set out in Article 15.3(d). Such audit shall be conducted in such a fashion that it does not cause unreasonable inconvenience to SOCAR. SOCAR shall accord to the auditor reasonable access to such evidence as the auditor may require to satisfy the auditor as to full payment of Contractor Party's Profit Tax for any Calendar Year from funds generated by SOCAR's commercial activities. Any interest charges or penalties assessed as a result of the late payment of Profit Tax due to SOCAR's failure to pay such tax in a timely manner shall be taken by Contractor from SOCAR's share of Profit Petroleum.

          (ii)     It is specifically acknowledged that Profit Petroleum sharing as set out in Article 13.6 shall be so determined to include Contractor Party's Profit Tax in SOCAR's share of Profit Petroleum from which SOCAR must pay such Contractor Party's Profit Tax to the State Budget as provided in Article 15.2.(c). Therefore, the payment of the Profit Tax by SOCAR on behalf and in the name of the Contractor under Article 15.2.(c) shall be treated by SOCAR and the Tax Inspectorate as having been paid by the Contractor and as a complete satisfaction and release of the Contractor's obligation to pay Profit Tax related to its Hydrocarbon Activities as set forth in Articles 15.2(a) and 15.2(b). The Tax Inspectorate shall look solely to SOCAR for the payment of the Contractor's Profit Tax.

(iii)   If SOCAR fails from time to time to pay a Contractor Party's Profit Tax, including estimated Profit Tax, then Contractor Party shall have the right, individually and at its option, to elect to make payments of its Profit Tax, including estimated Profit Tax directly to the State Budget as provided for in Article 15.2(c). In such case the Contractor Party's future entitlement to lift Profit Petroleum shall be increased, and SOCAR's entitlement shall be correspondingly diminished, by a volume of equivalent value to such amount of Profit Tax, including estimated Profit Tax, paid by the Contractor Party. In the event that the non-payment by SOCAR of a Contractor Party's Profit Tax, including estimated Profit Tax, continues for a period exceeding thirty (30) days from the due date for payment, the Contractor Party shall have the option of discharging its liability for all future payments of Profit Tax, including estimated Profit Tax, itself, and requiring that the terms of this Agreement shall be adjusted to re-establish the initial economic equilibrium of the Parties.

(e)   Taxable Profit, or if such sum is negative Taxable Loss, of a Contractor Party for a Calendar Year shall be equal to the sum of the Sales Income, the Other Income received by the Contractor Party during the Calendar Year and Profit Tax Gross Up less Deductions. The terms Taxable Profit, Taxable Loss, Sales Income, Other Income, Profit Tax Gross Up and Deductions shall have the meaning ascribed to them in this Article 15.2.

(f)   Taxable Losses shall be carried forward to the next Calendar Year and set off against any available Taxable Profit in that Calendar Year and Taxable Losses shall be reduced accordingly. Any balance of Taxable Losses not so set off in that Calendar Year shall be carried forward without limitation to future Calendar Years until fully set off against Taxable Profit.

(g)     Taxable Profit as reduced by Taxable Losses brought forward, shall be subject to Profit Tax at the Profit Tax Rate.

(h)     Sales Income shall be defined as the amount of income derived during the Calendar Year by the Contractor Party from sales of Petroleum produced in the conduct of Hydrocarbon Activities. In the event such Petroleum is exchanged or swapped, then Sales Income shall be defined as the amount of income derived during the Calendar Year by such Contractor Party from sales of the Petroleum received in the exchange or swap. For purposes of this Article 15.2(h), Sales Income shall be determined by applying, in the case of arm's length sales (as defined in Article 16.2(d)(v)), the actual price realised by such Contractor Party, and, in the case of non arm's length sales, the principles of valuation as set out in Article 16.2 for such non arm«s length sales.

(i)     Other Income shall be defined as any amounts of cash received by a Contractor Party in the carrying on of Hydrocarbon Activities, including but not limited to the following:

(i)     insurance proceeds; and

(ii)    realised exchange gains; and

(iii)   amounts received under Articles 17.5(a) and (b) from the Abandonment Fund; and

(iv)    amounts received under Article 17.5(b) for distributions of excess funds in the Abandonment Fund; and

(v)     interest income; and

(vi)    amounts received from suppliers, manufacturers or their agents in connection with defective materials and equipment; and

65

(vii)   amounts received for the use of facilities or intellectual property, compensation for services, sales of materials or charter hire; and

(viii)  refunds of Profit Tax originally paid by SOCAR, and refunded to a Contractor Party, in the event SOCAR is not compensated by such Contractor Party. SOCAR shall be entitled to deduct such amount of Profit Tax in computing its own taxable profit.

Provided, however, Other Income shall not include the following amounts received by a Contractor Party:

(1)     amounts received from sales of Petroleum; and

(2)     except as otherwise provided in Articles 15.2(l)(iii)(bb) and 15.2(l)(iv), amounts received from sales of Fixed Assets; and

(3)     amounts received as loans, or funds contributed, to the Contractor Party; and

(4)     amounts received from sales of any of the Contractor Party's rights and obligations arising under this Agreement; and

(5)     amounts received as refunds of Taxes (except as provided in (viii) above) or as dividends received by a Contractor Party from an Affiliate of such Contractor Party; and



(6)     amounts received in reimbursement of or otherwise in connection with expenditures incurred by a Contractor Party (or an Affiliate thereof) in excess of the amounts of such expenditures that have been treated as Deductions by the Contractor Party for purposes of computing Taxable Profit or Taxable Loss (in which case the amounts of any such excess shall not thereafter be treated as Deductions by the Contractor Party for such purposes and corresponding adjustments shall be made to the balance in Article 15.2(m)); and

(7)     amounts received which are not freely at the disposal of and do not increase the wealth of the Contractor Party; and

(8)     income otherwise subject to Profit Tax.

(j)     Profit Tax Gross Up shall be defined as an amount equal to the total amount of a Contractor Party's Profit Tax liability for a Calendar Year which is payable on behalf of the Contractor Party by SOCAR pursuant to Article 15.2(c) above; such Profit Tax liability being thirty two (32) percent of Contractor Party's Taxable Profit for such Calendar Year. Final net after tax income shall equal Sales Income, plus Other Income, less Deductions. This Article 15.2 (j) shall be used to calculate the tax SOCAR should pay. If SOCAR fails to pay such tax and the terms of this Agreement are permanently changed so that Contractor Party pays instead, then Profit Tax Gross Up shall equal zero. If SOCAR fails to pay such tax and Contractor Party pays instead, then Profit Tax Gross Up shall equal zero.

(k)     For purposes of determining the amount of the Taxable Profit or Taxable Loss of a Contractor Party for a Calendar Year, Deductions shall include all costs incurred by the Contractor Party directly or through the Operating Company in connection with the carrying on of Hydrocarbon Activities whether incurred in the Azerbaijan Republic or elsewhere, including but not limited to the following:

67

(i)    the full amount of gross wages, salaries, and other amounts paid to all employees of the Contractor Party together with all costs incurred in connection with the provision of accommodation, food, public utilities, children's education, and travel to and from home country for employee and family; and

(ii)    all costs of Azerbaijan State social insurance, including, but not limited to contributions to the pension fund, to the social insurance fund, to the employment fund and to the medical insurance fund and all the other social payments for the employees; and

(iii)   all exploration and appraisal costs; and

(iv)   all costs associated with drilling wells (excluding the costs of any item of equipment or capital asset which is usually salvaged in accordance with practices generally accepted and recognised in the international Petroleum industry); and

(v)    all costs of transportation of Petroleum to the Point of Sale and of marketing, including without limitation pipeline tariffs, commissions and brokerages; and

(vi)   all payments made under a lease agreement for the current year of the lease; and

(vii)  all insurance costs; and

(viii) all personnel training costs; and

(ix)   all costs connected with the activities of the offices or other places of business of each Contractor Party including management, research and development, general administration expenses; and

68

(x)    the cost of any item of equipment or asset which is not a fixed asset; and

(xi)   all amounts of interest, fees and charges paid in respect of any debt incurred in carrying out the Hydrocarbon Activities and any refinancing of such debts, excluding (1) in the case of Affiliate debt, interest in excess of a rate which would have been agreed upon between independent parties in similar circumstances, and (2) interest which becomes payable because the debt is repaid after its due date for repayment; and

(xii)  an allocable portion covering general administrative support provided by a Contractor Party's Affiliates outside of the Azerbaijan Republic which results in an indirect benefit to Hydrocarbon Activities. Such support will include the services and related office costs of personnel performing administrative, legal, treasury, tax and employee relations, provision of expertise and other non-technical functions which cannot be specifically identified or attributed to particular projects. The allocable portion of such costs with respect to this Agreement for each Contractor Party for the Calendar Year shall be equal to the amount determined using the following formula:

$a = (b/c)\ d$

where:

$a$ = the allocable portion for a Contractor Party for the Calendar Year;

$b$ = the percentage Participating Interest of that Contractor Party at the end of the Calendar Year;

$c$ = the sum of the percentage Participating Interests of the Contractor Parties at the end of the Calendar Year; and

69

    $d$ = the sum of the general and administrative overhead of the Contractor Parties for the Calendar Year.

The sum of the general and administrative overhead of the Contractor Parties for the Calendar Year shall be the amount determined using the following formula:

$$d = w + x + y + z$$

where:

$d$ = the sum of the general and administrative overhead of the Contractor Parties for the Calendar Year;

$w$ = five (5) percent of the sum of the Contractor Parties' Capital Costs for the Calendar Year, if any, up to fifteen million (15,000,000) Dollars;

$x$ = two (2) percent of the sum of the Contractor Parties' Capital Costs for the Calendar Year from fifteen million (15,000,000) Dollars to thirty (30,000,000) million Dollars, if any;

$y$ = one (1) percent of the sum of the Contractor Parties' Capital Costs for the Calendar Year in excess of thirty million (30,000,000) Dollars, if any; and

$z$ = one point five (1.5) percent of the sum of the Contractor Parties' Operating Costs for the Calendar Year; and

(xiii)  all payments into the Abandonment Fund; and

(xiv)  losses of materials or assets resulting from destruction or damage, assets which are renounced or abandoned during the Calendar Year, bad debts and payments made to Third Parties as compensation for damage; and



(xv)   any other losses, including realised exchange losses, or charges directly related to Hydrocarbon Activities; and

(xvi)  all other expenditures which the Contractor Party incurs in carrying out Hydrocarbon Activities; and

(xvii) all incidental costs incurred for the acquisition or occupation of land in connection with Hydrocarbon Activities; and

(xviii) all liabilities and related costs charged to the Contractor Party which are in excess of such Contractor Party's Participating Interest share of such liabilities and related costs and which shall only be entered in the books and accounts of such Contractor Party;

(xix)  amortization calculated as hereinafter provided in Article 15.2(l).

(l)    (i)    Amortisation Deductions shall be calculated as follows:

|     |     |     |
|-----|-----|-----|
| (aa) | Fixed Assets which are not described in (bb) or (cc) below | twenty (25) percent per Calendar Year declining balance basis |
| (bb) | Bonus Payments | ten (10) percent per Calendar Year straight line basis |
| (cc) | Office buildings, warehouses and similar constructions ("Buildings") | two point five (2.5) percent per Calendar Year straight line basis |



71

The amount of amortisation for expenditure on a fixed asset shall be computed on the cost of the fixed asset exclusive of VAT on goods purchased in Azerbaijan Republic. Any item which is treated as Deduction under Article 15.2 (k) shall not be amortised under Article 15.2(l).

(ii)    All expenditures on fixed assets described in Article 15.2 (l)(i)(aa) incurred during the Calendar Year shall be deemed to have been incurred on first (1st) July with the result that fifty (50) percent of the expenditure shall be added to the balance of the unamortised amounts brought forward from the preceding Calendar Year. The balance shall then be reduced by any amounts received from the disposal of fixed assets to give an adjusted balance ("Adjusted Balance") which will then be amortised as follows:

| | |
|---|---|
| Balance brought forward from Preceding Calendar Year | x |
| Add fifty (50) percent of the expenditure incurred on fixed assets during Calendar Year | x |
| Less the full amount of the actual proceeds from sales of fixed assets during Calendar Year | (x) |
| Adjusted Balance | x |
| Less amortisation: Twenty five (25) percent of the Adjusted Balance | (x) |
| Add excluded fifty (50) percent Balance of expenditure Incurred on fixed assets during the Calendar Year | x |

Balance to carry forward to
Following Calendar Year                    x

(iii)  If in any Calendar Year, all fixed assets in the Azerbaijan Republic used in Hydrocarbon Activities for the purposes of this Agreement are disposed of (including but not limited to a transfer pursuant to Article 17) then:

   (aa)  if the Adjusted Balance plus the "excluded fifty (50) percent balance of expenditure incurred on fixed assets during the Calendar Year" is positive, the full amount shall be treated as a Deduction in that Calendar Year, or

   (bb)  if the Adjusted Balance plus the "excluded fifty (50) percent balance of the expenditure incurred on fixed assets during the Calendar Year" is negative, the full amount shall be treated as Other Income in that Calendar Year.

(iv)  There shall be treated as Other Income or Deductions the amount of gains or losses recognised by a Contractor Party during the Calendar Year from the sale, disposition or abandonment ("Disposition") of a Building computed as follows:

Proceeds (if any) from
Building Disposition                       x

Less: Adjusted Basis of Building          (x)


Gain/(Loss) on Building
Disposition                                x

The Adjusted Basis of such Building shall be calculated as follows:

Original Cost of the Building              x

73

|  |  |
|---|---|
| Add cost of capitalised Improvements | x |
| Less accumulated amortization Deductions | (x) |
| Adjusted Basis of Building | x |

(m) For purposes of computing a Contractor Party's Taxable Profit or Taxable Loss, all costs incurred by the Contractor Party in connection with Hydrocarbon Activities (including but not limited to costs incurred directly or indirectly in connection with technical work in the Azerbaijan Republic or elsewhere and costs incurred by representative offices in the Azerbaijan Republic of the Contractor Party) which were incurred prior to the Effective Date shall be deemed to have been incurred on such date. Notwithstanding the foregoing, direct or indirect costs of conducting the negotiation of this Agreement and in supporting medical, cultural or charitable activities prior to the execution of this Agreement shall not be included in computing the Contractor Party's Taxable Profit or Taxable Loss.

(n) A Contractor Party has the right to sell or transfer any fixed assets which it owns at market prices without regard to book value of the fixed assets.

(o) Should any Contractor Party assign all or any part of its Participating Interest in the Agreement, the assigning Contractor Party shall have the option to elect to have the assignee treat as Deductions for the Calendar Year in which the assignment occurs all, or a proportional part if only part is assigned, of the Taxable Loss, if any, of the assignor Contractor Party for such Calendar Year.

## 15.3  Profit Tax Accounting and Returns

(a) Each Contractor Party shall:



74

(i)    maintain its tax books and records, and compute its Taxable Profit and Taxable Loss, exclusively in Dollars.

(ii)    recognize items of Sales Income, Other Income and Deductions in accordance with the cash receipts and disbursements basis applicable in the Azerbaijan Republic as of the Effective Date.

(iii)    draw up its tax financial statements and Profit Tax returns in Dollars and submit one set of accounts for the Calendar Year consisting of a tax balance sheet and profit and loss account, together with one Profit Tax computation for the Calendar Year reflecting its Hydrocarbon Activities.

(iv)    have its tax financial statements and Profit Tax return for each Calendar Year audited by an auditor appointed by the Contractor Party and who has relevant permits (licenses) to carry out such audits in the Azerbaijan Republic.

(v)    submit such tax financial statements and Profit Tax returns for each Calendar Year together with an appropriate comment from the auditor to the Tax Inspectorate no later than the fifteenth (15th) March of the following Calendar Year. In the case of preliminary Profit Tax return filing, Contractor Party shall have the right to file the final Profit Tax return within one (1) calendar month after the filing deadline.

