UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of Arbitration between

        :

Frontera Resources Azerbaijan Corporation,

        :

                  Petitioner,

        :

               - against -

        :

State Oil Company of the Azerbaijan Republic,

        :

                  Respondent.

        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Hon. Richard J. Holwell
06 Civ. 1125 (RJH)

## MEMORANDUM OF LAW IN SUPPORT OF SOCAR'S
## MOTION TO DISMISS THE PETITION

**Patterson, Belknap, Webb & Tyler LLP**
Attorneys for Defendant
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND ........................................................................................................................1

SOCAR's Presence in New York...............................................................................................3

LEGAL ARGUMENT.................................................................................................................3

I.     This Court Does Not Have Jurisdiction Over Socar...........................................................3

II.    This Court Should Dismiss The Petition On The Grounds Of Forum Non Coveniens.......8

III.   The Court Should Dismiss The Petition Because Socar Never Agreed
       To Arbitrate This Dispute................................................................................................10

IV.    Even If This Court Finds It Has Jurisdiction Over Socar, The Southern District Is A
       Convenient Forum And That Socar Agreed To Arbitrate, The Court Should Stay
       Confirmation Of The Award Pending The Outcome Of Socar's Appeal...........................13

CONCLUSION.........................................................................................................................16

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Base Metal Trading, Ltd., v. OJSC "Novokuznetsky Aluminum Factory",
    283 F.3d 208 (4th Cir.), cert. denied, 537 U.S. 822  (2002) ................................................3

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985).............................................................................................7

Caribbean Trading and Fidelity Corp. v. Nigerian National Petroleum Corp.,
    No. 90 Civ. 4169 (JFK), 1990 WL. 213030 (S.D.N.Y. Dec. 18, 1990), cert.
    denied, 504 U.S. 910 (1992) ..............................................................................15

Dardana Ltd. v. A.O. Yuganskneftegaz,
    317 F.3d 202 (2d Cir. 2003)...........................................................................3, 5

Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,
    156 F.3d 310 (2d Cir. 1998)................................................................13, 14, 16

Filus v. Lot Polish Airlines,
    907 F.2d 1328 (2d Cir. 1990)................................................................................6

Foot Locker Retail, Inc. v. SBH Inc.,
    Civ. No. 03-5050 (DAB), 2005 WL. 91306 (S.D.N.Y. Jan. 18, 2005) ..............................6

Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,
    284 F.3d 1114 (9th Cir. 2002) ......................................................................3, 4, 6, 8

God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates,
    6 N.Y.3d 371, 2006 WL. 721504 (Mar. 23, 2006) ...........................................................12

Hanil Bank v. PT. Bank Negara Indonesia (Persero),
    148 F.3d 127 (2d Cir. 1998).....................................................................................8

In the Matter of the Arbitration Between Monegasque de Reassurances S.A.M. v. NAK
    Naftogaz of Ukraine,
    311 F.3d 488 (2d Cir. 2002)......................................................................8, 9, 10

Masonite Corp. v. Hellenic Lines, Ltd., ,
    412 F. Supp. 434 (S.D.N.Y. 1976) ..........................................................................6-7

McGee v. International Life Insurance Co.,
    355 U.S. 220 (1957)....................................................................................................7

## TABLE OF AUTHORITIES
## <u>(continued)</u>

**PAGE**

MGM Productions Group, Inc. v. Aeroflot Russian Airlines,
No. 03 Civ. 0500 (RMB), 2003 WL. 21108367 (S.D.N.Y. May 14, 2003), <u>cert</u>.
<u>denied</u>, 543 U.S. 956 (2004) .............................................................................................15

Nedagro B.V. v. Zao Konversbank,
No. 02 Civ. 3946 (HB), 2003 WL. 151997 (S.D.N.Y. Jan. 21, 2003).........................14, 15

Republic of Argentina v. Weltover Inc.,
504 U.S. 607 (1992)......................................................................................................8

Smit v. Isiklar Holding A.S.,
354 F. Supp. 2d 260 (S.D.N.Y. 2005)...............................................................................6

Spier v. Calzaturificio Tecnica, S.p.A.,
663 F. Supp. 871 (S.D.N.Y. 1987) ..................................................................................15

St. Lawrence Explosives Corp. v. Worthy Bros. Pipeline Corp.,
111 F.3d 124 (2d Cir. 1997)............................................................................................11

Texas Trading & Milling Corp. v. Federal Rep. of Nig.,
647 F.2d 300 (2d Cir. 1981)..............................................................................................8

Topps Co., Inc. v. Gerrit J. Verburg Co.,
961 F. Supp. 88 (S.D.N.Y. 1997) .....................................................................................5

Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.,
622 F. Supp. 25 (S.D.N.Y. 1985) ......................................................................................3

Turbana Corporation v. M/V "Summer Meadows",
Civ. No. 03-2099 (HB), 2003 WL. 22852742 (S.D.N.Y. Dec. 2, 2003) .............................6

Waldron v. Goddess,
61 N.Y.2d 181, 461 N.E.2d 273, 473 N.Y.S.2d 136 (1984)..............................................12

Wasserstein Perella Emerging Markets Finance, L.P. v. Province of Formosa,
Civ. No. 97-793(BSJ), 2002 WL. 1453831 (S.D.N.Y. 2002)...............................................8

## STATUTES, RULES & REGULATIONS

9 U.S.C. § 201...................................................................................................................3

## TABLE OF AUTHORITIES
### (continued)

**PAGE**

9 U.S.C. § 201, art. V(1)(c)..............................................................................................................11

9 U.S.C. § 201, art. VI .....................................................................................................................13

Fed. R. Civ. P. 4(k)(2)........................................................................................................................5

Fed. R. Civ. P. 12(b)(2)......................................................................................................................3

Federal Arbitration Act, 9 U.S.C. § 1 ................................................................................................5

Federal Arbitration Act, 9 U.S.C. § 9 ..............................................................................................13

Foreign Sovereign Immunities Act, 28 U.S.C. § 1603 ......................................................................3

N.Y. CPLR § 302(a)(1)-(3)................................................................................................................6

The State Oil Company of the Azerbaijan Republic ("SOCAR") submits this Memorandum of Law in Support of its motion to dismiss the petition to confirm an arbitral award. Frontera Resources Azerbaijan Corporation's ("Frontera" or "Petitioner") petition should be dismissed for lack of jurisdiction over SOCAR, for failure to state a claim upon which relief can be granted and on *forum non conveniens* grounds. Alternatively, SOCAR requests that this Court exercise its discretion to stay confirmation of the award pending SOCAR's appeal of the award to the Swedish Court of Appeals in Stockholm, Sweden.

## BACKGROUND

SOCAR, a state-owned company in the Republic of Azerbaijan, manages the natural oil resources of the Republic of Azerbaijan. Frontera is an American oil exploitation company. In November 1998, SOCAR, Frontera and two other parties entered into an agreement which gave Frontera the right to exploit certain oil deposits in Azerbaijan if Frontera committed to deliver, each calendar quarter, an agreed amount of the extracted oil at a certain fixed local price to SOCAR. The structure of the agreement meant that Frontera, as soon as the delivery obligation had been fulfilled, had the right to export all other oil from the fields to the world market at world market prices and thereby be compensated for the costs and the surplus of the production. This project was financed, in part, by a loan from the European Bank for Reconstruction and Development ("the Bank").

After a series of misunderstandings and meetings between the parties to resolve those misunderstandings[1], Frontera and SOCAR negotiated an agreement which was documented in December 2000 (the "December 2000 Protocol"). Pursuant to the December 2000 protocol, the parties agreed to resume observance of the original agreement. Nevertheless,

---

[1] For a more complete discussion of this history of misunderstandings and the background facts of this case, the Court is respectfully referred to SOCAR's appellate brief filed with the Swedish Court of Appeal on April 12, 2006 and attached as Exhibit B to the Declaration of Rovnag Abdullayev.

disagreements between the parties persisted, and there were continuing disputes as to what Frontera's rights and obligations were with regard to the delivery of local oil to SOCAR at the local market price.

In March 2002, the Bank called in its loan on the grounds that Frontera had failed to fulfill the conditions of the loan agreement. Frontera agreed to assign absolutely all of its rights, including those granted to it by its agreement with SOCAR, to the Bank. On July 4, 2002, SOCAR entered into a settlement with the Bank to resolve all of the parties' outstanding and unsettled issues pertaining to the delivery of the local oil. (Declaration of John D. Winter in Support of SOCAR's Motion to Dismiss, Ex. A ("July 2002 Protocol")).

In spite of the transfer of all of its rights to the Bank under the original agreement and the December 2000 Protocol, Frontera proceeded to arbitrate in Stockholm its alleged claims against SOCAR over the delivery of local market oil, seeking $15,737,447, plus interest. However, these issues had been resolved with the Bank and Frontera had no standing to arbtitrate them.

On January 16, 2006, an Arbitral Tribunal awarded Frontera $1,240,784 plus interest at the rate of LIBOR plus four percent from January 1, 2001 until full payment is made. The Arbitral Tribunal also ordered *Frontera to pay SOCAR* $170,400 for its costs of arbitration. SOCAR's appeal of the Arbitral Tribunal's decision was filed with the Swedish Court of Appeal in Stockholm on February 3, 2006. (Declaration of Rovnag Abdullayev in Support of SOCAR's Motion to Dismiss the Petition to Confirm Arbitration Award, ("Abdullayev Decl."), Ex. A). Pursuant to a direction of the Swedish Court of Appeal, SOCAR made its submission regarding its appeal on April 12, 2006. (Id., Ex. B).

-2-

**SOCAR's Presence in New York**

SOCAR has no assets in, nor any jurisdictional contacts, with New York or the United States.  (Abdullayev Decl., ¶¶ 2-8).  It has no offices, employees, property or other form of "jurisdictional presence" in New York or anywhere else in the United States.

## LEGAL ARGUMENT

## I.      THIS COURT DOES NOT HAVE JURISDICTION OVER SOCAR

The petition should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks jurisdiction over SOCAR.

The grant of subject matter jurisdiction to federal courts over foreign arbitral awards, by and through the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603 *et seq.*, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and The Convention for the Recognition and Enforcement of Foreign Arbitral Awards, (the "New York Convention"), 9 U.S.C. § 201, has not eliminated the due process requirement that a court have jurisdiction over a defendant's person or property in a suit to confirm an arbitration award.  Dardana Ltd. v. A.O. Yuganskneftegaz, 317 F.3d 202, 206-08 (2d Cir. 2003) (taking note of holdings that the New York Convention did not alter constitutional requirement that personal jurisdiction must be established over respondents to confirm a foreign arbitration award); Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1118 (9th Cir. 2002) (holding that "the [New York] Convention does not eliminate the due process requirement that a federal court have jurisdiction over a defendant's person or property in a suit to confirm a previously issued [foreign] arbitration award"); Base Metal Trading, Ltd., v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212-13 (4th Cir.) (requiring petitioner to establish personal jurisdiction and finding that "the presence of property alone will not support jurisdiction"), cert. denied, 537 U.S. 822

(2002); see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A., 622 F. Supp. 25, 27

(S.D.N.Y. 1985) ("Some basis must be shown, whether arising from the respondent's residence,

his conduct, his consent, the location of his property or otherwise, to justify his being subject to

the court's power.").[2]

      For example, in Glencore Grain a Netherlands corporation, with its principal

place of business in Rotterdam, agreed to purchase 300,000 tons of rice from an Indian

corporation with its principal place of business in New Delhi. Glencore Grain, 284 F.3d at 1118.

The parties contracted to arbitrate their disputes before the London Rice Brokers' Association,

and did so when a dispute arose. Id. The Netherlands corporation sought to confirm its resulting

arbitration award in the federal court in California. Id. The Netherlands company submitted

evidence of the Indian company's contacts with the United States as a whole to justify the

exercise of personal jurisdiction. Id. at 1119. These contacts included a 1987 shipment of rice in

to the Port of Los Angeles, seven shipments through East Coast ports from 1993 to 1995, fifteen

shipments into the Port of San Francisco from March 1999 to March 2000, and the name of an

individual and his Union City, California company which acted as a sales agent in the United

States for the Indian company. Id. Noting, among other things, that construction of the FAA to

dispense with the jurisdictional requirements of due process in actions to confirm arbitral awards

"would raise clear questions concerning the constitutionality of the statutes," the Ninth Circuit

held that: (1) a district court must have jurisdiction over a defendant to enforce an arbitration

award against it or its property; and (2) that the above described contacts were insufficient to

meet the minimum contacts required for such jurisdiction. Also noting that California's long-

arm statute permitted the exercise of jurisdiction to the constitutional limits of due process, the

---

[2] Petitioner ignored the requirement of personal jurisdiction in its motion. SOCAR reserves its right to object to arguments Petitioner raises in its Reply as to why the New York Convention either lessened or allegedly eliminated the personal jurisdiction requirement for federal courts.

Ninth Circuit held that specific jurisdiction over the Indian company was improper, that general jurisdiction also was improper because the Indian company's contacts were not sufficiently "substantial, continuous, and systematic" to constitute "purposeful availment" of the forum. Because minimum contacts were lacking, the Ninth Circuit held that personal jurisdiction would be unreasonable and that the district court did not have jurisdiction under Fed. R. Civ. P. 4(k)(2) as the Netherlands company failed to identify assets of the Indian company that could form the basis of jurisdiction over those assets.  Id. at 1123-28.

Similar to this case, in Dardana a Cayman Islands corporation sought to confirm in the Southern District an arbitration award obtained in Sweden against two Russian entities. Dardana, 371 F.3d at 204.  The Second Circuit remanded for factfinding whether the respondents had sufficient contacts with the United States to justify jurisdiction under Fed. R. Civ. P. 4(k)(2).

SOCAR has no assets or jurisdictional ties to New York or the United States, and New York's long-arm statute does not reach as far as the Constitution permits.  Topps Co., Inc. v. Gerrit J. Verburg Co., 961 F. Supp. 88, 90 (S.D.N.Y. 1997).  New York's long-arm statute confers jurisdiction over an entity when it is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the jurisdiction."  Dardana Ltd., 317 F.3d at 206 n.9 (citations omitted).  New York's long-arm statute also confers jurisdiction over any non-domiciliary who:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> (2) commits a tortious act within the state ⋯, or
>
> (3) commits a tortious act without the state causing injury to person or property within the state ⋯ if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.
>
> (4) owns, uses or possesses any real property situated within the state.

Foot Locker Retail, Inc. v. SBH Inc., Civ. No. 03-5050 (DAB), 2005 WL 91306 at *3 (S.D.N.Y. Jan. 18, 2005) citing N.Y. CPLR § 302(a)(1)-(3).  It is a petitioner's burden to establish the propriety of a court's exercise of personal jurisdiction over parties to a suit.  Smit v. Isiklar Holding A.S., 354 F. Supp. 2d 260, 263-64 (S.D.N.Y. 2005).  Moreover, where a plaintiff fails to plead a *prima facie* showing of personal jurisdiction, a court may only order limited discovery "if it would serve to fill any holes in [that] showing."  Id.  A plaintiff is not entitled to any discovery without pleading at least a reasonable basis for the court's jurisdiction.  Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990).  Because Petitioner's alleged bases for this Court to assume jurisdiction over SOCAR fail as a matter of law, there is no need for discovery or fact-finding here.  Id.

   First, Petitioner cites "SOCAR's processing of revenues from its sale of oil and petroleum products through bank accounts in New York."  (Frontera's Petition to Confirm Arbitral Award ("Petition"), ¶ 5(a)).  However, SOCAR does not have bank accounts in New York or anywhere else in the United States, (Abdullayev Decl., ¶ 6), and Petitioner has adduced no facts in support of this first jurisdictional claim.  But even if it did, the mere existence of bank accounts in New York or the U.S. would not suffice for either general, specific, or personal jurisdiction.  Glencore Grain, 284 F.3d at 1119; see also Turbana Corporation v. M/V "Summer Meadows", Civ. No. 03-2099 (HB), 2003 WL 22852742 at *3 (S.D.N.Y. Dec. 2, 2003) ("New York courts have consistently held that the maintenance of a local bank account does not, without more, amount to 'doing business' in the state."); Masonite Corp. v. Hellenic Lines, Ltd.,

412 F. Supp. 434 (S.D.N.Y. 1976) (the mere existence of bank account in New York could not serve as basis for jurisdiction under New York's long-arm statute when bank account did not give rise to plaintiff's cause of action).

Second, Petitioner asserts this Court has jurisdiction over SOCAR because of "SOCAR's regular contact with the United States, in the form of its regular conduct of business with entities and persons located in the United States, including, without limitation, ExxonMobil, Chevron, Unocal, Moncrief, and Conoco Phillips." (Petition, ¶ 5(b)).  Unlike the petitioner in Dardana, Petitioner has not pointed to these facts in an effort to seek discovery on SOCAR's assets in and contacts with the United States.  Instead, Petitioner asserts that SOCAR's business dealings with the above-named entities constitute an independent basis for this court to assume jurisdiction over SOCAR.   In essence, Petitioner asserts an invalid "two-degrees-of-separation theory" of jurisdiction: because this Court may have jurisdiction over entities with which SOCAR conducts business, it has jurisdiction over SOCAR.  It is axiomatic that a party has not purposefully availed itself of a forum such that it should reasonably anticipate being haled into court there unless "the defendant *himself* [has] create[d] a 'substantial connection' with the forum *State*."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) citing McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957) (emphasis added).  Here, Petitioner does not argue that SOCAR has that type of connection with New York, but that SOCAR has a connection with someone else who did.  Petitioner cites no caselaw in support of this proposition, which would eliminate the minimum contacts analysis and drastically increase the jurisdiction of the federal courts.

There is no basis to justify this Court obtaining jurisdiction over SOCAR. SOCAR does not transact business in New York or in the United States and has not transacted

business anywhere to supply goods and services in New York or the United States. (Abdullayev Decl., ¶¶ 2-3).  SOCAR owns no real property in New York.  (Id., ¶5).  Moreover, SOCAR has no assets in the United States.  (Id., ¶ 7).  SOCAR's contacts with the United States in general, and with New York in particular, are not merely less continuous and substantial than those of the Indian company in Glencore whose contacts were found to fall below the bare minimum. SOCAR's contacts with the United States, in the form of business dealings or assets, are simply nonexistent.

Finally, contrary to Petitioner's assertion (Petition, ¶ 5), SOCAR is a "person" over which this Court is required to find that it has personal jurisdiction.  Wasserstein Perella Emerging Markets Finance, L.P. v. Province of Formosa, Civ. No. 97-793(BSJ), 2002 WL 1453831 (S.D.N.Y. 2002) citing Texas Trading & Milling Corp. v. Federal Rep. of Nig., 647 F.2d 300, 314 (2d Cir. 1981) (holding that a foreign state is a "person" within the meaning of the Due Process Clause); cf. Hanil Bank v. PT. Bank Negara Indonesia (Persero), 148 F.3d 127, 134 (2d Cir. 1998) (calling into question, but not overruling Texas Trading in light of Republic of Argentina v. Weltover Inc., 504 U.S. 607 (1992)).

Because this Court has no basis to assert jurisdiction over SOCAR as it is required to do, it should dismiss Petitioner's motion to confirm the arbitration award.

## II.     THIS COURT SHOULD DISMISS THE PETITION ON THE GROUNDS OF *FORUM NON COVENIENS*

In the Matter of the Arbitration Between Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine, 311 F.3d 488 (2d Cir. 2002), the Second Circuit affirmed the dismissal of a petition to confirm a foreign arbitration award on the grounds of forum non conveniens.  In Monegasque, a company organized under the laws of Monaco, with a parent company in Australia, petitioned in the Southern District to confirm an arbitration award

obtained in Russia against a Ukrainian company.  Id. at 490-92.  In reaching the conclusion that the district court properly dismissed the petition, the Second Circuit confirmed that *forum non conveniens* analysis applies to the New York Convention.  Id. at 495-97.

According to the Second Circuit, the "first level of inquiry" in a *forum non conveniens* analysis is the degree of deference to be paid to a plaintiff's choice of forum, observing that "a domestic petitioner's choice of its home forum receives great deference, while a foreign petitioner's choice of a United States forum receives less deference."  Id. at 497.  The degree of deference is determined on a "sliding scale" in which the lesser the lawsuit's bona fide connection to the United States and to New York, the easier it will be for the respondent to gain dismissal for *forum non conveniens*.  Id. at 498.  The next inquiry is to determine whether an alternative forum exists.  Id.  Finally, a court must balance the private and public interest factors in determining whether there should be an adjudication in the petitioner's choice of forum.  Id. at 500.  Private interest factors include the convenience of the litigants, the ease of access to proof, the availability of compulsory process, the cost of obtaining the attendance of willing witnesses, and other practical problems that would make trial of a case easy, expeditious, and inexpensive. Id.  Public interest factors include the administrative difficulties of court congestion; the burden of adjudication upon a community that bears no relationship to the litigation; the local interest in resolving local disputes, and the problems implicated in applying foreign law.  Id.  In weighing these factors, the Monegasque Court concluded that Ukraine would be a more appropriate forum than the Southern District, and affirmed the dismissal on *forum non conveniens* grounds.  Id. at 501.

The facts here could not be more similar to those in Monegasque.  Frontera is organized under the laws of the Cayman Islands and has its principal place of business there.

(Petition, ¶ 2). SOCAR is based in Baku, Azerbaijan. (Id., ¶3). The arbitration took place in Sweden. SOCAR has no assets in and no jurisdictional contacts with the United States and none of the witnesses are here. These factors all counsel in favor of little or no deference to Petitioner's choice of forum. Moreover, another appropriate forum exists: the courts of Sweden or Azerbaijan. Indeed, proceedings are currently ongoing in Stockholm regarding the dispute.

There is no question that the private interests of the litigants disfavor New York and favor Sweden or Azerbaijan as forums in terms of access to proof and the availability of witnesses. And while these factors may not at first appear to be relevant in the context of a motion to confirm an arbitration award, they are quite relevant. In Monegasque, the Court noted the complicating factor that the petitioner had brought in a respondent who was not a party to the agreement to arbitrate. Monegasque, 311 F.3d at 500. Here, Petitioner is not an appropriate party to this action, as Petitioner signed over all of its rights in its agreement with SOCAR to the Bank. Moreover, public interest factors weigh in favor of *forum non conveniens* dismissal. New York, and the United States, simply has no interest in resolving this case. The parties are not American companies, the case does not implicate American law, it was not arbitrated here, SOCAR has no assets here and conducts no business here. The courts of the Southern District have far greater interest in resolving local disputes from the local community, disputes from whom energy and resources will inevitably be diverted to this case.

For these reasons, this Court should dismiss the petition on *forum non conveniens* grounds, in keeping with the precedent established in Monegasque.

## III.   THE COURT SHOULD DISMISS THE PETITION BECAUSE SOCAR NEVER AGREED TO ARBITRATE THIS DISPUTE

Under Article V(1)(c) of the New York Convention, a Court may refuse to recognize or enforce an arbitration award if "[t]he award deals with a difference not

contemplated by or not falling within the terms of the submission to arbitration." 9 U.S.C. § 201,

art. V(1)(c). Likewise, a federal court may confirm an arbitration award only if the parties have

agreed to arbitrate their dispute. St. Lawrence Explosives Corp. v. Worthy Bros. Pipeline Corp.,

111 F.3d 124 (2d Cir. 1997) quoting the Federal Arbitration Act, 9 U.S.C. § 9 (A federal court

may confirm an arbitration award only if "the parties in their agreement [to arbitrate] have

agreed that a judgment of the court shall be entered upon the award made pursuant to the

arbitration.") According to the terms of the contract between Frontera and SOCAR, the parties

agreed to arbitrate disputes under the following conditions:

> SECTION 26.3: Arbitration
>
> (a) Except for any matter to be referred to an expert pursuant to Articles 16.2 (a)(ii) and 16.2 (c), in the event of a dispute arising between SOCAR and any or all of the Contractor parties (including matters which are not resolved at the Steering Committee), *the disputing Parties shall meet in an attempt to resolve the dispute to their mutual satisfaction by reference to the terms of this Agreement.* If satisfactory mutual agreement is not achieved within thirty (30) days after receipt by a Party of notice of such dispute, such dispute shall be settled in accordance with the Arbitration Procedure and the applicable law provisions of Article 26.1.
>
> …
>
> (c) The rights and obligations under this Article 26.3 shall survive the termination of this Agreement.
>
> …
>
> APPENDIX 6: ARBITRATION PROCEDURE
>
> Except as otherwise provided in this Agreement, all disputes arising between SOCAR and any or all of the Contractor Parties, including without limitation, any dispute as to the validity, construction, enforceability or breach of this Agreement, *which are not amicably resolved by the Parties in accordance with the*

*provisions of the Article 26.3* (a) shall be finally settled by a sole arbitrator appointed by the unanimous decision of the Parties or, in the absence of such unanimous decision, by a panel of three (3) arbitrators, under the Arbitration Rules of The United Nations Commission on International Trade Law known as UNCITRAL (the "Rules") adopted on 15 December 1976 as amended by UNCITRAL from time to time. In the event the Rules fail to make provisions for any matter or situation the arbitration tribunal shall establish its own rules to govern such matter and procedure and any such rules so adopted shall be considered as a part of the Rules. For purpose of allowing such arbitration, and enforcement and execution of any arbitration decision, award, issuance of any attachment, provisional remedy or other pre-award remedy, each Party waives any and all claims to immunity, including, but not limited to, any claims to sovereign immunity.

(Winter Decl., Ex. B) (emphasis added). Thus, the parties agreed to arbitrate their dispute only after (a) they first tried to resolve the dispute in an amicable manner and (b) an amicable solution was not reached.

An amicable solution was reached in the dispute over delivery of the local oil under the July 2002 Protocol. (Winter Decl., Ex. A). Therefore, SOCAR never agreed to arbitrate this dispute, and the Petition should be dismissed for failure to state a claim upon which relief may be granted. God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates, 6 N.Y.3d 371, 2006 WL 721504 (Mar. 23, 2006) (a party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties' "clear, explicit and unequivocal" agreement to arbitrate) citing Waldron v. Goddess, 61 N.Y.2d 181, 461 N.E.2d 273, 473 N.Y.S.2d 136 (1984) (reversing lower court order to compel arbitration and granting stay of arbitration).

**IV.    EVEN IF THIS COURT FINDS IT HAS JURISDICTION OVER SOCAR, THE SOUTHERN DISTRICT IS A CONVENIENT FORUM AND THAT SOCAR AGREED TO ARBITRATE, THE COURT SHOULD STAY CONFIRMATION OF THE AWARD PENDING THE OUTCOME OF SOCAR'S APPEAL**

Under Article VI of the New York Convention, a Court "may adjourn the decision on the enforcement of the award." 9 U.S.C. § 201, art. VI.  The decision to grant or deny a stay of confirmation of an arbitration award pending the outcome of a foreign proceeding falls squarely within this Court's discretion and is reviewable solely for an abuse of that discretion. Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 317-18 (2d Cir. 1998)  The Second Circuit has set forth a six-part test (the "Europcar Italia test") that must be applied in deciding whether to grant a stay.

Under the Europcar Italia test, the Court must weigh the following factors in deciding whether to grant an application for a stay:

> (1) the general objectives of arbitration--the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

> (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award or to set the award aside; (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

> (5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive

> "suitable security" and that, under Article V of the Convention, an
> award should not be enforced if it is set aside or suspended in the
> originating country, (insolvency of one party may play role in
> determining relative hardships); and
>
> (6) any other circumstances that could tend to shift the balance in
> favor of or against adjournment.

Europcar Italia, 156 F.3d at 317-18.

The factors enumerated in the Europcar Italia test weigh in favor of granting a stay here. One, if the Swedish Court of Appeal reverses the arbitration award, which SOCAR believes it will, this Court would be faced with litigation to undo an arbitration award that could have been avoided by simply staying this proceeding pending the outcome of that appeal. Two, the Swedish appeal already has been briefed and a hearing is imminent. Three, the award sought to be enforced will receive greater scrutiny in the foreign proceedings than it will here. Four, the appeal was filed in Stockholm on February 3, 2006, prior to the filing of the petition to confirm the arbitration award, raising concerns of international comity, and creating the appearance that with this action, Petitioner seeks to undermine the full and fair operation of the Swedish legal process. Five, because an award is not to be enforced if it is set aside in its originating country, the real risk of that outcome here should encourage this Court to grant the stay. Finally, Petitioner seeks to confirm an award with which it has not itself complied. The Arbitral Tribunal awarded SOCAR $170,400 in arbitration costs that the Petitioner has not yet paid. (Petition, ¶ 14(b); Abdullayev Decl., ¶ 9). All these factors counsel in favor of granting a stay pending the outcome of SOCAR's appeal.

Indeed, this case is nearly identical to Nedagro B.V. v. Zao Konversbank, No. 02 Civ. 3946 (HB), 2003 WL 151997 (S.D.N.Y. Jan. 21, 2003) in which a stay pending the outcome of proceedings in Russia was granted applying the Europcar Italia factors. In Nedagro, the petitioner moved to confirm an arbitration award in the Southern District after obtaining an

award against Konversbank in Russia. Konversbank appealed the judgment in Russia and sought a stay of the New York proceeding pending resolution of the Russian appeal. Out of concern for international comity, and because the finality of the arbitration award was questionable, (under Article V of the New York Convention, the lack of finality of an arbitration award is grounds to deny confirmation of that award) a stay was granted in Nedagro. In so doing, the Court noted: "I am loath to risk the possibility of an inconsistent result." Applying similar reasoning, other Courts in this District have granted stays in analogous circumstances. See Spier v. Calzaturificio Tecnica, S.p.A., 663 F.Supp. 871 (S.D.N.Y. 1987) (granting stay to allow Italian courts to resolve issue of Italian law); Caribbean Trading and Fidelity Corp. v. Nigerian National Petroleum Corp., No. 90 Civ. 4169 (JFK), 1990 WL 213030 (S.D.N.Y. Dec. 18, 1990), cert. denied, 504 U.S. 910 (1992) (granting stay to allow Nigerian courts to resolve issue of Nigerian law, but ordering respondent to post security in the amount of the arbitration award).[3]

---

[3] In the one case in which a Southern District Court denied a stay, the party seeking the stay had already sought a stay in the overseas proceeding and that application was denied. MGM Productions Group, Inc. v. Aeroflot Russian Airlines, No. 03 Civ. 0500 (RMB), 2003 WL 21108367 (S.D.N.Y. May 14, 2003), cert. denied, 543 U.S. 956 (2004). SOCAR had initiated its appeal in Sweden and already filed its brief before serving this motion. Under these circumstances and given this dispute's non-existent connection to this forum, filing a motion to stay this proceeding in Stockholm makes no sense.

## CONCLUSION

Because SOCAR has no contacts with the United States, no assets in the United States, and the underlying dispute has no connection to New York or the United States, this Court cannot exercise jurisdiction over SOCAR or should dismiss the Petition on *forum non conveniens* grounds. In addition, even if this Court were to exercise jurisdiction over SOCAR, the Petition should be dismissed because SOCAR never agreed to arbitrate this dispute. Alternatively, the Europcar Italia test weighs in favor of denying Petitioner's motion in light of SOCAR's pending appeal of the arbitration award before the Swedish Court of Appeal.

DATED: April 25, 2006

PATTERSON, BELKNAP, WEBB & TYLER LLP

By: _____
John D. Winter (JW-3252)
David H. Webber (DW-3876)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000
Attorneys for Defendant

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                             :   ss.:
COUNTY OF NEW YORK  )

        Ruth Seitz, being duly sworn, says:

        I am a resident of the State of New Jersey, over the age of eighteen years, and not a party to the within action. My business address is PATTERSON, BELKNAP, WEBB & TYLER LLP, 1133 Avenue of the Americas, New York, NY 10036-6710. On April 25, 2006, I served the within documents:

### MEMORANDUM OF LAW IN SUPPORT OF SOCAR'S MOTION TO DISMISS THE PETITION

☐    I sent such document from facsimile machine (212) 336-2222 on April 25, 2006. I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (212) 336-2222 which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in a mail depository maintained by the United States Postal Service at 1133 Avenue of the Americas, New York, NY 10036, addressed as set forth below.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

        James Berger, Esq.
        PAUL HASTINGS JANOFSKY & WALKER, LLP
        Park Avenue Tower, 75 East 55th St.
        New York, NY 10022

                                        _____
                                                Ruth Seitz

Sworn to before me this
25th day of April, 2006

Notary Public
MATTHEW M. FINNEGAN
Notary Public, State of New York
No. 01FI5080222
Qualified in New York County
Commission Expires June 16, 2007