John. D. Winter (JW-3252)
David H. Webber (DW-3876)
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Attorneys for the State Oil Company of the Azerbaijan Republic

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of Arbitration between

Frontera Resources Azerbaijan Corporation,

                  Petitioner,

          - against -

State Oil Company of the Azerbaijan Republic,

               Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Hon. Richard J. Holwell
06 Civ. 1125 (RJH)

**DECLARATION OF JOHN D.
WINTER IN SUPPORT OF
RESPONDENT'S MOTION TO
DISMISS THE PETITION**

STATE OF NEW YORK    )
                        : 
COUNTY OF NEW YORK  )

        John D. Winter being duly sworn, deposes and says:

        1.     I am an attorney admitted to practice before this Court and am a partner in the law

firm of Patterson, Belknap, Webb & Tyler LLP, counsel for Respondent the State Oil Company

of the Azerbaijan Republic ("SOCAR").

        2.     I submit this Declaration in support of Respondent's Motion to Dismiss

Petitioner's Motion to Confirm the Arbitration Award, and to place before the Court certain

documents relevant to the motions.

3.      Exhibit A is a true and correct copy of a July 4, 2002 settlement (the "July 2002 Protocol") between SOCAR and the European Bank for Reconstruction and Development, resolving all of the outstanding issues between SOCAR and the Bank, and by extension, Petitioner Frontera Resources Azerbaijan Corporation.

4.      Exhibit B is a true and correct copy of excerpts of the "Agreement on Rehabilitation, Exploration, Development and Production Sharing for the Block, Including the Kursangi and Karabagli Oil Fields in the Azerbaijan Republic Between The State Oil Company of the Azerbaijan Republic, Frontera Resources Azerbaijan Corporation, Delta/Hess (K&K Limited) and SOCAR Oil Affiliate," including those sections stating the conditions under which the parties agreed to arbitrate their disputes.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on April 24, 2006 in New York, New York.

By: _____
John D. Winter

1274106v1

# EXHIBIT A



# PROTOCOL

## AMONG

## THE STATE OIL COMPANY OF THE AZERBAIJAN REPUBLIC

## SOCAR OIL AFFILIATE

## CHINA NATIONAL OIL AND GAS EXPLORATION AND DEVELOPMENT CORPORATION

## FORTUNEMATE ASSETS LIMITED

## EUROPEAN BANK FOR RECONSTRUCTION AND DEVELOPMENT

## AND

## DELTA HESS (K&K) LIMITED

This Protocol is made on [ 4ᵗʰ July ] 2002 by and among the State Oil Company of the Azerbaijan Republic ("SOCAR"), SOCAR Oil Affiliate ("SOA"), China National Oil and Gas Exploration and Development Corporation ("CNODC"), Fortunemate Assets Limited ("FAL"), European Bank for Reconstruction and Development ("EBRD", acting pursuant to its rights under the Security Assignment (as defined below) for itself and in respect of the Frontera REDPSA Participating Interest (as defined below) and the Frontera JOA Participating Interest (as defined below)) and Delta Hess (K&K) Limited ("Delta Hess") (hereinafter referred to collectively as the "Parties").

WHEREAS

(a) SOCAR, SOA, Frontera Resources Azerbaijan Corporation ("Frontera") and Delta Hess entered into an Agreement dated 15ᵗʰ December 1998 on the Rehabilitation, Exploration, Development and Production Sharing for the Block, including the Kursangi and Karabagli Oil Fields in the Azerbaijan Republic (the "REDPSA") which became effective on 22ⁿᵈ April 1999;

(b) SOA, Frontera and Delta Hess (the "Original Contractor Parties") entered into a Joint Operating Agreement dated 22ⁿᵈ April 1999 for the Agreement on the Rehabilitation, Exploration, Development and Production Sharing for the Block, including the Kursangi and Karabagli Oil Fields in the Azerbaijan Republic (the "JOA");

(c) Under a Security Assignment of a Production Sharing Contract dated 14ᵗʰ November 2000 between Frontera and EBRD (the "Security Assignment"), Frontera agreed, as security for the performance by Frontera Resources Caucasus Corporation of certain obligations to EBRD, to assign absolutely to EBRD its percentage Participating Interest in the REDPSA (the "Frontera REDPSA

36


Participating Interest") and its percentage Participating Interest in the JOA (the "Frontera JOA Participating Interest");

(d) SOCAR and the Original Contractor Parties entered into a Protocol dated 29th December 2000 (the "December 2000 Protocol"), a copy of which is attached hereto as Appendix 1;

(e) By a Deed of Transfer dated 4th July 2001 (the "Deed of Transfer"), EBRD exercised its rights and powers under the Security Assignment to effect a transfer from Frontera to EBRD of the Frontera REDPSA Participating Interest and the Frontera JOA Participating Interest on the terms set out in such Deed;

(f) The Parties (other than CNODC and FAL) have agreed to export Crude Oil produced under the REDPSA using the northern export route and, between them, entered into the following agreements in that regard on 25th October 2001: (i) an Agency, Lifting and Local Market Oil Agreement between EBRD, Delta Hess, SOA and Salyan Oil Limited ("SOL") pursuant to which, inter alia, SOL was appointed as agent to the Contractor Parties for the purpose of selling the Contractor Parties' Crude Oil entitlement under the REDPSA; (ii) a Northern Export Sale Agreement between SOL, as agent to the Contractor Parties, Major Oil Pipelines Industrial Association of SOCAR ("MOP") and Foreign Economic Relations Department of SOCAR ("FERD") pursuant to which the Contractor Parties' Crude Oil entitlement under the REDPSA is delivered to MOP and sold to and marketed by FERD (the "NESA"); and (iii) a letter agreement between SOCAR, FERD and SOL pursuant to which the terms for the delivery and sale by SOL to SOCAR of Local Market Oil in accordance with the REDPSA were agreed;

(g) Pursuant to sale and purchase agreements dated 23rd January 2002 entered into by EBRD with CNODC and FAL respectively, EBRD agreed to sell fifty percent (50%) of its Participating Interest to CNODC and fifty percent (50%) of its Participating Interest to FAL (the "Sale and Purchase Agreements");

(h) Completion of the Sale and Purchase Agreements occurred on 7th March 2002 on the execution by CNODC and FAL of, inter alia, Assignment and Assumption Agreements in respect of the Participating Interest of EBRD;

(i) Pursuant to Paragraph 7 of the December 2000 Protocol, SOCAR, SOA, EBRD and Delta Hess have agreed to enter into this Protocol, inter alia, as a final settlement of their differences in respect of the 1999/2000 LMO dispute;

(j) The Parties have also agreed to enter into this Protocol to clarify the applicable Local Market Oil price pursuant to Article 14.1(c) of the REDPSA and the accounting principles to be used for the purposes of Cost Recovery;

NOW THEREFORE, the Parties agree as follows:

2

1.  **Definitions**

Terms herein contained and expressed with the initial letter capitalized shall have the same meaning as those given to them in the REDPSA except as otherwise stated herein and shall be construed accordingly.

2.  **Deliveries in 1999/2000**

2.1  Original Contractor Parties' Local Market Oil Obligations

SOCAR accepts that the Original Contractor Parties are deemed to have met all of their obligations with respect to the delivery and sale of Local Market Oil under the REDPSA during the period 1st November 1999 to 31st December 2000.

2.2  SOCAR's Local Market Oil Obligations and non-payment by SOCAR of (a) Local Market Oil deliveries from 1st November 1999 to 1st April 2000 and (b) deliveries of Crude Oil to SOCAR during December 2000

Each of Delta Hess, SOA and EBRD accept that SOCAR is deemed to have met all of its obligations with respect to payment for Local Market Oil under the REDPSA during the period 1st November 1999 to 31st December 2000 and agree to make no further claim with respect to payment from SOCAR for non-payment by SOCAR of (a) Local Market Oil deliveries from 1st November 1999 to 1st April 2000 and (b) for deliveries of Crude Oil to SOCAR during December 2000.

2.3  Payment for the difference between the Local Market Oil price and the Net Back Value for Crude Oil exported from 1st April 2000 to 1st December 2000

SOCAR agrees to make no further claim with respect to payment from the Original Contractor Parties, EBRD and/or the Contractor Parties for amounts of Crude Oil exported from the Contract Area during the period 1st April 2000 to 1st December 2000.

3.  **December 2000 Protocol**

With effect from the date hereof, the December 2000 Protocol shall cease to have effect and shall be deemed terminated accordingly.

4.  **Price for Local Market Oil**

The Contractor Parties, EBRD and SOCAR agree that the applicable price for Local Market Oil as established by the Governmental Authorities of the Azerbaijan Republic for local market pursuant to Article 14.1(c) of the REDPSA to be applied to all relevant Crude Oil deliveries at the Delivery Point under the REDPSA from 1st January 2001 is 268,000 Manats per net metric ton as reduced by the transportation charge of 7,000 Manats per net metric ton and that this price for Local Market Oil shall remain the applicable price unless and until an alternative price is established by the Governmental

3

Authorities of the Azerbaijan Republic for local market pursuant to Article 14.1(c) of the REDPSA. Accordingly, the price to be paid by SOCAR for Local Market Oil delivered under the REDPSA from 1st January 2001 is 261,000 Manats per metric ton until amended by the Government Authorities pursuant to Article 14.1(c) of the REDPSA.

5.    **Accounting of Costs and Revenues for the Purposes of Cost Recovery**

5.1    **Period from 1st November 1999 to 31st December 2000**

5.1.1    In order to resolve the valuation of Crude Oil lifted from the Contract Rehabilitation Area during the period 1st November 1999 to 31st December 2000, SOCAR, SOA, EBRD and Delta Hess agree that the following principles are to be applied for deliveries made in such period:

   (a)    The aggregate revenues (after adjusting for costs incurred by the Parties of transporting the Crude Oil to the Point of Sale as determined in accordance with Article 16.2(a) of the REDPSA) to be recorded for the purposes of Cost Recovery for the above period ("Net Revenues") shall be eighteen million nine hundred and twenty two thousand and forty five Dollars (US$ 18,922,045) as confirmed in the report by Ernst and Young entitled "Independent Accountant's Report on Applying Agreed-Upon Procedures" dated [17th] April 2002. Net Revenues relating to Crude Oil deliveries made prior to 31st December 2000 shall be recorded in the Calendar Quarter Cost Recovery report for the Calendar Quarter in which they were received, or if they were received after 31st December 2000, in Calendar Quarter 4 of Calendar Year 2000. Details of revenues and volumes sold for this period are in Appendix 2.

   (b)    The Petroleum Costs to be recorded for the purposes of Cost Recovery for the above period shall be the actual costs paid in each Calendar Quarter during the period commencing 1st November 1999 and ending on 31st December 2000.

5.1.2    As the Cost Recovery position at 31st December 2000 is to be determined under paragraph 5.1.1 above based upon the aggregate Net Revenues and Petroleum Costs for the period 1st November 1999 to 31st December 2000, SOCAR, SOA, EBRD and Delta Hess agree that there is no obligation to provide or agree any Net Back Values for this period.

5.2    **Period subsequent to 1st January 2001**

5.2.1    In the valuation of Crude Oil for the purposes of Cost Recovery, as detailed under Article 16.2 and 16.3 of the REDPSA, the Parties hereby agree that the following clarifications to the REDPSA are to be applied to all Crude Oil deliveries from 1st January 2001:

   (a)    Subject to this paragraph 5.2 and paragraph 5.3 below, the Net Back Value to be applied in accordance with Article 16.2(c) and 16.3 of the

REDPSA to all deliveries of Crude Oil at the Delivery Point in a Calendar Quarter shall be calculated on the basis of the costs and expenses for all sales made during such Calendar Quarter, and the revenues from all sales made during such Calendar Quarter, regardless of when such costs, expenses and revenues were invoiced, paid, or received.

(b)    The Net Back Value for Local Market Oil and World Market Oil (as defined in the NESA) for a given Calendar Quarter shall be calculated and applied separately to the respective volumes of Local Market Oil and World Market Oil delivered at the Delivery Point during such Calendar Quarter.

(c)    Where it is necessary to determine a provisional Net Back Value for a specific Calendar Quarter by applying the Net Back Value determined for the preceding Calendar Quarter in accordance with Articles 16.2(c) and 16.3(a)(ii) of the REDPSA, then such provisional Net Back Value shall be determined by applying the relevant Net Back Value for World Market Oil for the previous Calendar Quarter to the deliveries of World Market Oil at the Delivery Point and the relevant Net Back Value for Local Market Oil for the previous Calendar Quarter to the deliveries of Local Market Oil at the Delivery Point.

5.2.2    Where deliveries of either Local Market Oil or World Market Oil at the Delivery Point have been sold to SOCAR or a department of SOCAR such as FERD, then if by the submission of the Calendar Quarter Cost Recovery report for the Calendar Quarter following the Calendar Quarter in which such deliveries were made, SOCAR or the relevant department of SOCAR has not paid the full amount specified in the relevant invoice, then any shortfall shall be deducted from the Cost Recovery revenues stated in the Calendar Quarter Cost Recovery report for the Calendar Quarter in which such deliveries were made but not paid for. The Net Back Value calculations for such Calendar Quarters shall remain unchanged.

5.2.3    If any revenue shortfall under paragraph 5.2.2 above is subsequently paid by SOCAR or the relevant department of SOCAR, then such additional revenues shall be recorded in the Calendar Quarter Cost Recovery report for the Calendar Quarter in which the amounts were received. The Net Back Value calculations for such Calendar Quarters shall remain unchanged.

## 5.3    Exchange Rate

5.3.1    The Exchange Rate to be used for conversion of revenues from Local Market Oil sales generated in AZM to Dollars shall be the weighted average exchange rate in AZM obtained by dividing the total of AZM revenues received for deliveries at the Delivery Point of Local Market Oil in the Calendar Quarter by the total Dollar revenues received for such deliveries of Local Market Oil. The Dollar value of each delivery of Local Market Oil is calculated by applying the AZM/$ exchange rate, on the date upon which

Authorities of the Azerbaijan Republic for local market pursuant to Article 14.1(c) of the REDPSA. Accordingly, the price to be paid by SOCAR for Local Market Oil delivered under the REDPSA from 1st January 2001 is 261,000 Manats per metric ton until amended by the Government Authorities pursuant to Article 14.1(c) of the REDPSA.

5.  **Accounting of Costs and Revenues for the Purposes of Cost Recovery**

5.1  **Period from 1st November 1999 to 31st December 2000**

5.1.1  In order to resolve the valuation of Crude Oil lifted from the Contract Rehabilitation Area during the period 1st November 1999 to 31st December 2000, SOCAR, SOA, EBRD and Delta Hess agree that the following principles are to be applied for deliveries made in such period:

    (a)    The aggregate revenues (after adjusting for costs incurred by the Parties of transporting the Crude Oil to the Point of Sale as determined in accordance with Article 16.2(a) of the REDPSA) to be recorded for the purposes of Cost Recovery for the above period ("Net Revenues") shall be eighteen million nine hundred and twenty two thousand and forty five Dollars (US$ 18,922,045) as confirmed in the report by Ernst and Young entitled "Independent Accountant's Report on Applying Agreed-Upon Procedures" dated [17th] April 2002. Net Revenues relating to Crude Oil deliveries made prior to 31st December 2000 shall be recorded in the Calendar Quarter Cost Recovery report for the Calendar Quarter in which they were received, or if they were received after 31st December 2000, in Calendar Quarter 4 of Calendar Year 2000. Details of revenues and volumes sold for this period are in Appendix 2.

    (b)    The Petroleum Costs to be recorded for the purposes of Cost Recovery for the above period shall be the actual costs paid in each Calendar Quarter during the period commencing 1st November 1999 and ending on 31st December 2000.

5.1.2  As the Cost Recovery position at 31st December 2000 is to be determined under paragraph 5.1.1 above based upon the aggregate Net Revenues and Petroleum Costs for the period 1st November 1999 to 31st December 2000, SOCAR, SOA, EBRD and Delta Hess agree that there is no obligation to provide or agree any Net Back Values for this period.

5.2  **Period subsequent to 1st January 2001**

5.2.1  In the valuation of Crude Oil for the purposes of Cost Recovery, as detailed under Article 16.2 and 16.3 of the REDPSA, the Parties hereby agree that the following clarifications to the REDPSA are to be applied to all Crude Oil deliveries from 1st January 2001:

    (a)    Subject to this paragraph 5.2 and paragraph 5.3 below, the Net Back Value to be applied in accordance with Article 16.2(c) and 16.3 of the

payment for each delivery was actually received, to the domestic market price for Crude Oil established by the Government of the Azerbaijan Republic. "Exchange Rate" is defined as the National Bank of Azerbaijan exchange rate on the date upon which payment for each delivery of Local Market Oil is actually received.

5.3.2    Where payment for a delivery of Local Market Oil made in a Calendar Quarter has not been received at the time of submission of the Calendar Quarter Cost Recovery report for such Calendar Quarter in accordance with paragraph 4 of Appendix 3 of the REDPSA, then the Exchange Rate on the last day of such Calendar Quarter shall be provisionally applied to such delivery for the purposes of such report.

5.3.3    Once actual payment has been received however then the actual Exchange Rate on the date upon which payment for each delivery was actually received shall be used in accordance with paragraph 5.3.1 for the purposes of Cost Recovery. Any revenue adjustment resulting from differences in the provisional Exchange Rate under paragraph 5.3.2 and the actual Exchange Rate shall be recorded in the Calendar Quarter Cost Recovery report for the Calendar Quarter in which payment is actually received.

5.4    **Barrel Factor**

The Barrel Factor (as defined under the NESA) to be applied to Local Market Oil shall be determined in accordance with the same mechanism for World Market Oil as stated in Article 1.10 of the NESA.

5.5    **Cost Recovery Reports and Net Back Values**

5.5.1    Revised Calendar Quarter Cost Recovery reports for each Calendar Quarter from Calendar Quarter 4 of the Calendar Year 1999 to Calendar Quarter 4 of the Calendar Year 2001 and the Net Back Values for each Calendar Quarter from Calendar Quarter 1 of Calendar Year 2001 to Calendar Quarter 4 of Calendar Year 2001 shall be submitted to SOCAR by SOL on behalf of the Contractor Parties within thirty (30) days of the signing of this Protocol.

5.5.2    The Calendar Quarter Cost Recovery reports for each Calendar Quarter from Calendar Quarter 4 in the Calendar Year 1999 to Calendar Quarter 4 in the Calendar Year 2000 shall be deemed to have been served, in accordance with the time limits specified in the REDPSA.

5.5.3    The Net Back Values and Calendar Quarter Cost Recovery reports for each Calendar Quarter from Calendar Quarter 1 in the Calendar Year 2001 to Calendar Quarter 4 in the Calendar Year 2001 shall be deemed to have been served in accordance with the time limits specified in the REDPSA.

6.      **Reaffirmation of REDPSA**

6.1     SOCAR, SOA and Delta Hess acknowledge and agree that the provisions of this Protocol are binding on them and constitute an amendment to the terms of the REDPSA, the terms of which SOCAR, SOA and Delta Hess reaffirm, as amended by this Protocol. EBRD acknowledges and agrees, in respect of the period prior to 7th March 2002, that the provisions of this Protocol are binding on it and constitute an amendment to the terms of the REDPSA. CNODC and FAL acknowledge and agree that the provisions of paragraphs 1, 4, 5.2, 5.3, 5.4, 6.2, 6.3 and 6.4 of this Protocol are binding on them and constitute an amendment to the terms of the REDPSA, the terms of which CNODC and FAL reaffirm, as amended by this Protocol provided that, subject to paragraph 8 below, CNODC and FAL shall not be bound by the provisions of such foregoing paragraphs to the extent that the matters dealt with within them relate to the period prior to 7th March 2002.

6.2     The provisions of Article 26 (Applicable Law, Economic Stabilization and Arbitration) of the REDPSA shall apply, mutatis mutandis, to this Protocol.

6.3     This Protocol is effective as of the date hereof.

6.4     This Protocol is written in the English and Azeri languages, each of which is of equal legal force, but in the event of any discrepancy or inconsistency between them, the English version shall govern.

7.      **Authority of EBRD**

EBRD acknowledges and confirms for the benefit of the other Parties that it has the right and authority to enter into this Protocol and to agree to its terms (in relation to the period prior to 7th March 2002) in respect of the Frontera REDPSA Participating Interest and the Frontera JOA Participating Interest pursuant to the terms of the Security Assignment.

8.      **CNODC and FAL**

8.1     CNODC and FAL acknowledge that their rights under their respective Participating Interest subsist only with effect from 7th March 2002. CNODC and FAL acknowledge and confirm accordingly that they have no right to claim against the other Parties (but without prejudice to any right to claim against EBRD under the indemnities referred to in Clause 8.3 of the Sale and Purchase Agreements) in respect of, or to otherwise dispute or challenge the validity of or the terms of, the agreement made by the other Parties in this Protocol to the extent that such agreement relates to the period prior to 7th March 2002.

8.2     EBRD acknowledges that it remains bound hereunder, in relation only to the Transferred Interest, in respect of the terms of this Protocol to the extent that such terms relate to the period prior to the 7th March 2002.

IN WITNESS WHEREOF the Parties have executed this Protocol by their duly authorised representatives on the date first above written.

For and on behalf of the State Oil Company of the Azerbaijan Republic:

By: _____

Name: _____

Title: _____


For and on behalf of the China National Oil and Gas Exploration and Development Corporation:

By: _____

Name: _WANG SHAUI_

Title: _VP_


For and on behalf of Fortunemate Assets Limited:

By: _____

Name: _LI HUALIN_

Title: _DIRECTOR_


For and on behalf of SOCAR Oil Affiliate:

By: _____

Name: _VALEH ALESKEROV_

Title: _GEN. MANAGER of FID_

For and on behalf of European Bank for
Reconstruction and Development:

By: _____

Name: _Thomas Moss_

Title: _Head of Office, Baku_


For and on behalf of Delta Hess
(K&K) Limited:

By: _____

Name: _Tom Springall_

Title: _Azerbaijan Country Manager_

# EXHIBIT B

**AGREEMENT ON THE REHABILITATION, EXPLORATION,
DEVELOPMENT AND PRODUCTION SHARING FOR THE BLOCK,
INCLUDING THE KURSANGI AND KARABAGLI OIL FIELDS IN
THE AZERBAIJAN REPUBLIC**

**BETWEEN**

**THE STATE OIL COMPANY OF THE AZERBAIJAN REPUBLIC,**

**FRONTERA RESOURCES AZERBAIJAN CORPORATION,**

**DELTA/HESS (K&K) LIMITED**

**AND**

**SOCAR OIL AFFILIATE**

ARTICLE 26
APPLICABLE LAW, ECONOMIC STABILIZATION AND ARBITRATION          137

ARTICLE 27
NOTICES                                                         140

ARTICLE 28
EFFECTIVE DATE                                                  142

ARTICLE 29
ENVIRONMENTAL PROTECTION AND SAFETY                             144

ARTICLE 30
CONFIDENTIALITY                                                 147

ARTICLE 31
BONUS PAYMENTS                                                  150

ARTICLE 32
TERMINATION                                                     152

ARTICLE 33
MISCELLANEOUS                                                   158


APPENDICES

APPENDIX 1
DEFINITIONS                                                     (1)

APPENDIX 2
CONTRACT AREA AND MAP                                           (14)

APPENDIX 3
ACCOUNTING PROCEDURE                                            (17)

APPENDIX 4
FORM OF CONTRACTOR PARTY'S ULTIMATE PARENT
COMPANY GUARANTEE                                               (35)

APPENDIX 5

4

GUARANTEE AND UNDERTAKING OF THE GOVERNMENT OF THE
AZERBAIJAN REPUBLIC     (37)

APPENDIX 6
ARBITRATION PROCEDURE     (47)

APPENDIX 7
CRUDE OIL AND NATURAL GAS MEASUREMENT AND EVALUATION
PROCEDURE     (50)

APPENDIX 8
DESIGN STANDARDS AND SPECIFICATIONS     (53)

APPENDIX 9
EXPLORATION WORK PROGRAMME     (55)

APPENDIX 10
LIST AND PERFORMANCE OF SUBSURFACE RESERVOIRS AND HORIZONS     (59)

APPENDIX 11
LOCAL MARKET OIL PROGRAMME     (63)

ADDENDUM RELATING TO THE FORMATION OF SOCAR OIL AFFILIATE     -1-

5

The rights and interests accruing to Contractor (or its assignees) under this Agreement and its Sub-contractors under this Agreement shall not be amended, modified or reduced without the prior consent of Contractor. In the event that any Governmental Authority invokes any present or future law, treaty, intergovernmental agreement, decree or administrative order which contravenes the provisions of this Agreement or adversely or positively affects the rights or interests of Contractor hereunder, including, but not limited to, any changes in tax legislation, regulations, or administrative practice, the terms of this Agreement shall be adjusted to re-establish the economic equilibrium of the Parties, and if the rights or interests of Contractor have been adversely affected, then SOCAR shall indemnify Contractor (and its assignees) for any disbenefit, deterioration in economic circumstances, loss or damages that ensue therefrom. SOCAR shall within the full limits of its authority use its reasonable lawful endeavours to ensure that the appropriate Governmental Authorities will take appropriate measures to resolve promptly in accordance with the foregoing principles any conflict or anomaly between any such treaty, intergovernmental agreement, law, decree or administrative order and this Agreement.

26.3   **Arbitration**

    (a)    Except for any matter to be referred to an expert pursuant to Articles 16.2(a)(ii) and 16.2(c), in the event of a dispute arising between SOCAR and any or all of the Contractor Parties (including matters which are not resolved at the Steering Committee), the disputing Parties shall meet in an attempt to resolve the dispute to their mutual satisfaction by reference to the terms of this Agreement. If satisfactory mutual agreement is not achieved within thirty (30) days after receipt by a Party of notice of such dispute, such dispute shall be settled in accordance with the Arbitration Procedure and the applicable law provisions of Article 26.1.

(b)    Nothing in this Agreement shall limit the rights of the Contractor Parties pursuant to Articles 11 through 15 of the Law on Protection of Foreign Investment dated 15 January 1992, which rights shall apply in addition to any other rights Contractor may have under this Agreement notwithstanding any other law, both current and future, in the Azerbaijan Republic. If any of Contractor's rights, interests or property are expropriated, nationalised or otherwise taken by reason of any act or failure to act of any Governmental Authority, then the arbitrators shall apply the principle of indemnification (including prompt, full and effective compensation in Dollars) at the full market value, on the basis of an on-going concern utilising the discounted cash flow method, assuming a willing buyer and seller in a non-hostile environment, and disregarding the unfavourable circumstances under which or following which Contractor shall be deprived of its rights, interest (including its interest in undeveloped reserves) or property. The arbitrators shall select an investment bank of good international reputation for purpose of appraising the full market value of said rights, interest (including its interest in undeveloped reserves) or property of Contractor.

(c)    The rights and obligations under this Article 26.3 shall survive the termination of this Agreement.



## APPENDIX 6

### ARBITRATION PROCEDURE

1.1 Except as otherwise provided in this Agreement, all disputes arising between SOCAR and any or all of the Contractor Parties, including without limitation, any dispute as to the validity, construction, enforceability or breach of this Agreement, which are not amicably resolved by the Parties in accordance with the provisions of Article 26.3(a) shall be finally settled by a sole arbitrator appointed by the unanimous decision of the Parties or, in the absence of such unanimous decision, by a panel of three (3) arbitrators, under the Arbitration Rules of The United Nations Commission on International Trade Law known as UNCITRAL (the "Rules") adopted on 15 December 1976 as amended by UNCITRAL from time to time. In the event the Rules fail to make provision for any matter or situation the arbitration tribunal shall establish its own rules to govern such matter and procedure and any such rules so adopted shall be considered as a part of the Rules. For purposes of allowing such arbitration, and enforcement and execution of any arbitration decision, award, issuance of any attachment, provisional remedy or other pre-award remedy, each Party waives any and all claims to immunity, including, but no limited to, any claims to sovereign immunity.

1.2     The arbitration shall be held in Stockholm, Sweden. The language used during the procedure shall be the English language and only the English language text of this Agreement will be utilised by the arbitrators.

1.3     After providing thirty (30) days prior written notice to the other Party of intent to arbitrate, either SOCAR or Contractor may initiate arbitration (the Party initiating the arbitration shall hereinafter be called the "First Party") submitting a request for arbitration to the other Party, as provided in the rules, and the Secretary General of the Permanent Court of Arbitration in the Hague, and appointing an arbitrator who shall be identified in said request. Within thirty (30) days of receipt of a copy of the request the other Party to the dispute ("Second Party") shall respond, identifying the arbitrator that it has selected. If the Second Party does not so appoint its arbitrator, the Secretary General of the Permanent Court of Arbitration in the Hague shall appoint a second arbitrator in accordance with the Rules. The two arbitrators shall, within thirty (30) days, select a third arbitrator failing which the third arbitrator shall be appointed by the Secretary General of the Permanent Court of Arbitration in the Hague, in accordance with the Rules. Unless otherwise agreed in writing by the Parties, the third arbitrator to be appointed shall not be a citizen of a country in which any Party (including the Ultimate Parent Company of such Party) is incorporated.

1.4     The Parties shall extend to the arbitration tribunal all facilities (including access to the Petroleum Operations and facilities) for obtaining any information required for the proper determination of the dispute. Any Party shall be allowed only one absence or default beyond its reasonable control which prevents or hinders the arbitration proceeding in any or all of its stages. Additional absences, or absences which are within a Party's reasonable control, shall not be allowed to prevent or hinder the arbitration proceeding.

(48)

1.5    Without limiting the generality of their powers, the arbitrators shall have the power to award costs and damages as necessary with respect to the Government Guarantee and with respect to Article 26.2.

1.6    The arbitration tribunal's award shall be final and binding on the Parties and shall be immediately enforceable. Judgement on the award rendered may be entered and execution had in any court having jurisdiction or application may be made to such court for a judicial acceptance of the award and an order of enforcement and execution, as applicable.

1.7    Each Party shall pay the costs of its own arbitrator and the costs of the third arbitrator in equal shares, and any costs imposed by the Rules shall be shared equally by the Parties. Notwithstanding the above, the arbitrators may, however, award costs (including reasonable legal fees) to the prevailing Party from the losing Party. In the event that monetary damages are awarded, the award shall include interest from the date of the breach or other violation to the date when the award is paid in full. The rate of interest shall be LIBOR plus four (4) percent over the period from the date of the breach or other violation to the date the award is paid in full. Each Party waives any and all requirements of any national law relating to notice of a demand for interest or damage for the loss of the use of funds.



(49)

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                              :  ss.:

COUNTY OF NEW YORK   )

             Ruth Seitz, being duly sworn, says:

             I am a resident of the State of New Jersey, over the age of eighteen years, and not a party to the within action.  My business address is PATTERSON, BELKNAP, WEBB & TYLER LLP, 1133 Avenue of the Americas, New York, NY 10036-6710.  On April 25, 2006, I served the within documents:

             NOTICE OF MOTION, DECLARATION OF JOHN D. WINTER,
             DECLARATION OF ROVNAG ABDULLAYEV

☐    I sent such document from facsimile machine (212) 336-2222 on April 25, 2006.  I certify that said transmission was completed and that all pages were received and that a report was generated by facsimile machine (212) 336-2222 which confirms said transmission and receipt.  I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in a mail depository maintained by the United States Postal Service at 1133 Avenue of the Americas, New York, NY 10036, addressed as set forth below.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

             James Berger, Esq.
             PAUL HASTINGS JANOFSKY & WALKER, LLP
             Park Avenue Tower, 75 East 55th St.
             New York, NY 10022

                                           Ruth Seitz

Sworn to before me this
25th day of April, 2006

Notary Public

MATTHEW M. FINNEGAN
Notary Public, State of New York
No. 01FI5080222
Qualified in New York County
Commission Expires June 16, 2007