UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRONTERA RESOURCES AZERBAIJAN
CORPORATION,

                               Petitioner,

      -against-

STATE OIL COMPANY OF THE AZERBAIJAN
REPUBLIC,

                               Respondent.

06 Civ. 1125 (RJH)

**MEMORANDUM OPINION
AND ORDER**

---

        Petitioner Frontera Resources Azerbaijan Corporation ("Frontera") seeks enforcement of an award granted by a Swedish Arbitral Tribunal, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9 and 13.  Respondent State Oil Company of the Azerbaijan Republic ("SOCAR") moves to dismiss the petition for lack of personal jurisdiction and on *forum non conveniens* grounds.  In the alternative, SOCAR seeks to defer a decision pursuant to Article VI of the Convention on the Recognition and Enforcement of Arbitral Awards ("New York Convention"), implemented by 9 U.S.C. § 201 *et seq.*, until the annulment proceeding pending before the Svea Court of Appeals in Sweden is resolved.  For reasons detailed more fully below, SOCAR's motion to dismiss is granted.

### BACKGROUND

        Frontera is an oil exploitation company based in the Cayman Islands.  SOCAR is an oil company owned by the government of the Republic of Azerbaijan.  In November 1998, Frontera and SOCAR and two other parties entered into a financing and revenue

sharing agreement ("Agreement") pursuant to which Frontera was to explore, develop, rehabilitate, and manage certain oil deposits in Azerbaijan. The European Bank for Reconstruction and Development ("Bank") provided financing to Frontera for the project. In 2000, a dispute arose between Frontera and SOCAR regarding SOCAR's obligation to pay for oil delivered to it by Frontera. Frontera claims that as a result of SOCAR's nonpayment it sought to sell the oil to purchasers located outside Azerbaijan. In mid-November 2000, SOCAR instructed Azerbaijani customs authorities to stop Frontera's export of oil, which they did; SOCAR then seized the oil.

In March 2002, the Bank foreclosed on Frontera's loan and forced Frontera to assign to the Bank its rights in the project, although Frontera continued to seek payment from SOCAR for the oil previously delivered by Frontera and the oil seized by SOCAR. SOCAR denied liability, arguing that Frontera had assigned all of its rights under the agreement to the Bank, and that the Bank had settled its claims with SOCAR on July 4, 2002. When further attempts to resolve the dispute proved unsuccessful, Frontera served notice of the dispute on SOCAR as specified in the Agreement. When no resolution had been reached after the agreed-upon thirty days had elapsed, on July 10, 2003, Frontera served a request for arbitration on SOCAR. The arbitration was commenced and tried in Stockholm, Sweden. SOCAR participated in all aspects of the arbitration and asserted a counterclaim. Following a full hearing on the merits, the Arbitral Tribunal issued its final award on January 16, 2006. In the Award, the Arbitration Tribunal ordered SOCAR to pay Frontera $1,240,784 for the seized oil, plus interest, and ordered Frontera to compensate SOCAR for its costs of arbitration in the amount of $170,400. On February 14, 2006, Frontera filed a petition for confirmation of the award in this Court.

## DISCUSSION

SOCAR argues that the Court does not have personal jurisdiction over it, and that, in any event, the Court should dismiss the case under the doctrine of *forum non conveniens*. On the merits, SOCAR argues that the Court should refuse to enforce the arbitration award because Frontera assigned all of its claims under the Agreement to the Bank, who settled with SOCAR.

**1.     Motion to Dismiss**

"It is a plaintiff's burden to establish the propriety of a court's exercise of personal jurisdiction over parties to the suit." *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 263–64 (S.D.N.Y. 2005). Before discovery, a plaintiff may defeat a motion to dismiss for lack of personal jurisdiction by pleading a prima facie showing of personal jurisdiction over defendants. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998); *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). At this stage, all pleadings and affidavits are construed in plaintiff's favor. *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). Where the pleadings indicate that limited discovery is likely to uncover additional facts supporting jurisdiction, a court may order discovery targeted at the missing jurisdictional elements. *Turbana Corp. v. M/V "Summer Meadows"*, No. 03 Civ. 2099 (HB), 2003 U.S. Dist. LEXIS 21583, 2003 WL 22852742, at *1 (S.D.N.Y. Dec. 2, 2003).

**2.     Statutory Personal Jurisdiction**

Under the Foreign Sovereign Immunities Act ("FSIA"), both statutory subject matter jurisdiction and personal jurisdiction turn on application of the substantive

3

provisions of the Act.  *See Verlinden B.V. v. Cent. Bank of Nig.*, 461 U.S. 480, 485 (1983).  Under 28 U.S.C. § 1330(a), a district court has subject matter jurisdiction if a foreign state is "not entitled to immunity either under sections 1605–1607 . . . or under any applicable international agreement"; under § 1330(b), a district court has personal jurisdiction wherever subject matter jurisdiction exists under subsection (a) and service of process has been made under 28 U.S.C. § 1608.  Therefore, the FSIA "makes the statutory aspect of personal jurisdiction simple: subject matter jurisdiction plus service of process equals personal jurisdiction."  *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981), cert. denied, 454 U.S. 1148 (1982).

The Court concludes that SOCAR is not entitled to sovereign immunity and therefore that this Court has subject matter jurisdiction over the enforcement action.  The FSIA provides for subject matter jurisdiction over foreign states that have agreed to submit to arbitration their disputes with private parties where "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6)(B); *see Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 494 (2d Cir. 2002).  Here, the Agreement between Frontera and SOCAR had a provision that any disputes would be submitted to arbitration, the New York Convention is a treaty within the meaning of § 1605(a)(6)(B), *see Cargill Int'l, S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993), and Azerbaijan is a signatory to the New York Convention.  Therefore, SOCAR, as an instrumentality or agency of the Azerbaijani Government, implicitly waived any sovereign immunity defense.  *See*

4

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 578-579 (2d Cir. 1993) (describing requirements for implicit waiver).  Accordingly, this Court has subject matter jurisdiction of the enforcement action under 28 U.S.C. § 1330(a).  In addition, because the parties do not dispute that Frontera properly effected service on SOCAR pursuant to 28 U.S.C. § 1608(a), the statutory requirements for personal jurisdiction under the FSIA are met.  *See U.S. Titan Inc. v. Guangzhou Zhen Hua Shipping Co.*, 16 F. Supp. 2d 326, 335 (S.D.N.Y. 1998).

3.    **Due Process**

Although the statutory requirements for personal jurisdiction may have been satisfied, SOCAR contends that petitioner must also satisfy the constitutional due process requirement that non-residents defendants have "certain minimum contacts with [the jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).[1]  The Second Circuit has noted, but not resolved the issue of whether the "minimum contacts" analysis applies in the context of a petition to

---

[1] Frontera has not argued that SOCAR has waived its right to challenge personal jurisdiction because the Republic of Azerbaijan is a signatory to the Convention.  *See TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 302 n. ** (D.C. Cir. 2005) (noting this argument but finding it unnecessary to decide).  *But cf. Creighton Ltd. v. Government of Qatar*, 181 F.3d 118, 126 (D.C. Cir. 1999) ("[Petitioner], however, has not cited, nor are we aware of, any authority for the proposition that an agreement to arbitrate in one forum constitutes a waiver of the right to challenge personal jurisdiction in another.  On the contrary, the decisions of which we are aware have held that an implicit waiver of personal jurisdiction in a defendant's agreement to litigate or to arbitrate in a particular jurisdiction is applicable only within that jurisdiction.").  Because this argument was not raised in the Petition and respondent has not had an opportunity to address it, the Court declines to address it here.  *Chapro v. SSR Realty Advisors, Inc. Severance Plan*, 351 F. Supp. 2d 152, 155 (S.D.N.Y. 2004); *Mazurkiewicz v. Doylestown Hosp.*, 223 F. Supp. 2d 661, 665 (E.D. Pa. 2002).

enforce an arbitral award under the New York Convention.  *Dardana Ltd. v. A.O. Yuganskneftegaz*, 317 F.3d 202, 206–07 (2d Cir. 2003).  Other courts, however, have answered this question in the affirmative.  *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002) (holding that "the [New York] Convention does not eliminate the due process requirement that a federal court have jurisdiction over a defendant's person or property in a suit to confirm a previously issued [foreign] arbitration award."); *Base Metal Trading v. Ojsc Novokuznetsky Aluminum Factory*, 283 F.3d 208, 212 (4th Cir. 2002) ("[W]hile the [New York] Convention confers subject matter jurisdiction over actions brought pursuant to the Convention, it does not confer personal jurisdiction when it would not otherwise exist.  In other words, a plaintiff still must demonstrate that personal jurisdiction is proper under the Constitution."); *Base Metal Trading Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 47 F. App'x. 73, 76 (3d Cir. 2002) (following the Fourth Circuit's *Base Metal* decision); *American Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pakistan Ltd.*, No. 85 Civ. 3765 (JFK), 1986 U.S. Dist. LEXIS 28551, 1986 WL 2973, at *6 (S.D.N.Y. Mar. 5, 1986) (confirming arbitration award against wholly-owned corporation of Pakistani government where corporation "had a continuous and systematic presence in this district, and could have foreseen that it might be sued in this district"); *Transatlantic Bulk Shipping Ltd., v. Saudi Chartering S.A.*, 622 F. Supp. 25, 27 (S.D.N.Y. 1985) ("Some basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the court's power."); *see also Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir.

1993) (agreeing with district court that petitioner had established "sufficient 'minimum contacts' with the United States to satisfy due process requirements," but remanding on other grounds); *CME Media Enterprises B.V. v. Zelezny*, No. 01 Civ. 1733 (DC), 2001 U.S. Dist. LEXIS 13888, 2001 WL 1035138, at *3 (S.D.N.Y. Sept. 10, 2001) (confirming an arbitral award on the basis of quasi in rem jurisdiction to the extent of respondent's assets).[2]

B.     *The Application of Due Process to Foreign States*

Frontera argues that, even if the Due Process Clause does apply generally to the enforcement of foreign arbitral awards, no such requirement applies to the enforcement of an award against a foreign state—or, as here, a government-owned corporation such as SOCAR—because a foreign state is not a "person" within the meaning of the Due Process Clause. *See* U.S. Const. amend. V ("nor shall any person . . . be deprived of life, liberty, or property, without due process of law").

Although the Supreme Court has explicitly held that "the word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union," *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966), it remains an open question whether foreign states are persons. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619

---

[2] *But cf. Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1362 (7th Cir. 1985) ("Countless cases assume that foreign companies have all the rights of U.S. citizens to object to extraterritorial assertions of personal jurisdiction. The assumption has never to our knowledge actually been examined, but it probably is too solidly entrenched to be questioned at this late date . . . ." (citations omitted)); *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 302 n. ** (D.C. Cir. 2005) (questioning whether aliens are entitled to due process protections, and citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (holding that "aliens receive constitutional protections [only] when they have come within the territory of the United States and have developed substantial connections with this country")).

7

(1992) (citing *South Carolina v. Katzenbach* and stating that the Court would "[a]ssum[e], without deciding, that a foreign state is a 'person' for purposes of the Due Process Clause"). In 2002, however, the question of whether a foreign state is a "person" for due process purposes presented itself to the D.C. Circuit. *See Price*, 294 F.3d at 96 (D.C. Cir. 2002). The issue arose because a 1996 amendment to the FSIA added a new exception for state-sponsored terrorism in 28 U.S.C. § 1605(a)(7).[3] *See Price*, 294 F.3d at 88–89 (explaining the history of the amendment). Prior to this amendment, the majority of cases brought under the FSIA involved commercial activity, which requires an evaluation of the activity's effects in the United States. Because this analysis closely resembles the "minimum contacts" analysis under due process, "[m]ost courts . . . simply assumed that foreign states were entitled to Constitutional Due Process protections, just as courts have assumed that foreign corporations are entitled to Constitutional Due Process protections, at least with respect to the assertion of personal jurisdiction." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 19 (D.D.C. 1998); *see Price*, 294 F.3d at 90 ("When Congress passed the original FSIA, it was assumed that the exercise of personal jurisdiction over foreign states under the statute always would satisfy the demands of the Constitution. This assumption proved accurate." (citation omitted)); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991) (holding that "the commercial activity exception of Section 1605(a)(2) requires a closer nexus than the 'minimum contacts' necessary for due process."). With the passage of § 1605(a)(7),

---

[3] Under this exception, a foreign state defending against a damages claim resulting from alleged acts of terrorism and the like will lose its immunity if (a) the U.S. State Department has specifically designated the state as a "state sponsor of terrorism," (b) the state has been afforded a reasonable opportunity to arbitrate any claim based on acts that occurred within its borders, and (c) either the victim or the claimant was a U.S. national at the time that those acts took place. 28 U.S.C. § 1605(a)(7).

8

however, courts were free to re-examine this assumption because, under § 1605(a)(7), "the only required link between the defendant nation and the territory of the United States is the nationality of the claimant." *Price*, 294 F.3d at 90. It is in this context that the D.C. Circuit held that a foreign state is not a "person" within the meaning of the Due Process Clause, and, consequently, that no "minimum contacts" analysis is required once personal jurisdiction is established under the FSIA. *See Price*, 294 F.3d at 99.

The *Price* court's reasoning may be briefly summarized as follows: First, the court found that "it would be highly incongruous to afford greater Fifth Amendment rights to foreign nations, who are entirely alien to our constitutional system, than are afforded to the states, who help make up the very fabric of that system." *Id.* at 96. Moreover, permitting a foreign state to use personal jurisdiction as a shield against the power of the United States would contradict history and tradition: "Relations between nations in the international community are seldom governed by the domestic law of one state or the other"; rather, "sovereign states interact with each other through diplomacy and even coercion in ways not affected by constitutional protections such as the Due Process Clause." *Id.* at 97 (quoting *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001)). The Supreme Court has held, for example, that "it is within the exclusive power of the Executive Branch to determine which nations are entitled to sue." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 319–20 (1978). Furthermore, while Congress lacks the power under Article I to abrogate the sovereign immunity of the States of the Union, *Price*, 294 F.3d at 99 (citing *Alden v. Maine*, 527 U.S. 706, 712 (1999); *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 72–73 (1996)), Congress is free to modify or remove the sovereign immunity of foreign states, *id.* (citing

9

*Verlinden*, 461 U.S. at 486 ("[F]oreign sovereign immunity is a matter of grace and comity on the part of the United States, and not a restriction imposed by the Constitution.")).  Most importantly, the "'core of the concept' of due process is 'to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice,'" *id.* at 98 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, (1998)), a different interest than that which is "at stake when a sovereign nation . . . seeks to defend itself against the prerogatives of a rival government."  *Id.*  Conferring on foreign states a "due process trump . . . is thus not only textually and structurally unsound, but it would distort the very notion of 'liberty' that underlies the Due Process Clause."  *Id. at 99.*

In *Price*, the D.C. Circuit expressly declined to decide whether other entities that fall within the FSIA's definition of "foreign state"—including corporations—can be considered persons under the Due Process Clause.  *See Price*, 294 F.3d at 99–100.  Since then, the D.C. Circuit has extended *Price*'s holding to find that no due process analysis is required to confirm an arbitral award against an agent of a foreign state under the Convention. *TMR Energy Ltd.*, 411 F.3d at 302.  Whether an instrumentality of a foreign state is exempt under the *Price* analysis from the protections of the Due Process Clause turns on whether the foreign state has exerted sufficient control over its instrumentality to make it an agent of the state.  *See id.* at 301.

Since *Price*, every court to consider the issue has adopted the D.C. Circuit's holding.  *See Cassirer v. Kingdom of Spain*, 461 F. Supp. 2d 1157, 1168 (C.D. Cal. 2006) ("[U]nder the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction and the Due Process Clause imposes no limitation on a court's exercise of

10

personal jurisdiction over a foreign state." (quotations omitted)); *Rux v. Republic of Sudan*, No. 04 Civ. 428, 2005 U.S. Dist. LEXIS 36575, 2005 WL 2086202, at *18 (E.D. Va. Aug. 26, 2005) (agreeing with the D.C. Circuit that "to afford foreign states rights and protections against the United States Government that are not similarly extended to the States of the Union, would result in an irony not countenanced by the Constitution."); *Cruz v. United States*, 387 F. Supp. 2d 1057, 1067 (N.D. Cal. 2005) (holding that "the reasoning of *Price*[,] which this Court finds sound, counsels against affording the Mexican banks in this case the status of 'persons' within the scope of that term as used in the Due Process Clause."); *see also Altmann v. Republic of Aus.*, 142 F. Supp. 2d 1187, 1207 (C.D. Cal. 2001) (finding implicit support in Ninth Circuit precedent for its holding that foreign sovereigns are not 'persons' under the Due Process Clause); *cf. O'Bryan v. Holy See*, No. 04 Civ. 338-H, 2007 U.S. Dist. LEXIS 3147, 2007 WL 114162, at *9 (W.D. Ky. Jan. 10, 2007) ("Defendant Holy See cannot simultaneously seek the protections of the FSIA and the United States Constitution. Therefore, the First Amendment does not bar Plaintiffs' claims.").

In the Second Circuit, however, the leading precedent is still *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981), decided five years after the FSIA was enacted and fifteen years prior to the amendment of the FSIA addressed in *Price*. In *Texas Trading*, the Second Circuit noted the provision in § 1330 for personal jurisdiction where a court has subject matter jurisdiction over the claim and service of process has been made under § 1608. Nevertheless, the court held that "the Act cannot create personal jurisdiction where the Constitution forbids it. Accordingly, each finding of personal jurisdiction under the FSIA requires, in addition, a due process

11

scrutiny of the court's power to exercise its authority over a particular defendant." *Texas Trading*, 647 F.2d at 308.  Having found subject matter jurisdiction, the court explicitly asked whether a foreign state is a 'person' within the meaning of the due process clause.  The court found that while cases on point were "rare," a handful of federal courts had applied the Due Process Clause in suits against foreign states.  Without further analysis, the court affirmed that holding and proceeded to analyze the defendant's minimum contacts with the United States.  *Id.* at 313–14.

Recently, the Second Circuit has questioned the holding of *Texas Trading*, stating that "since the Supreme Court decided *Weltover*, we are uncertain whether our holding remains good law."  *Hanil Bank v. Pt. Bank Negara Indon. (Persero)*, 148 F.3d 127, 134 (2d Cir. 1998).  The *Hanil Bank* court avoided the question, however, by finding instead that due process requirements were met.  *See id.*  More recently, however, the Second Circuit, without citing to its discussion of *Texas Trading* in *Hanil Bank*, has held that "the exercise of personal jurisdiction under the FSIA must also comport with the Due Process Clause, which permits a forum to exercise personal jurisdiction over a non-resident defendant who has certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *U. S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001) (quotations omitted).  District courts within this Circuit have consistently followed the holdings in *Texas Trading* and *U.S. Titan*, although in each case the court has found that the minimum contacts analysis is satisfied.  *See Kensington Int'l Ltd. v. Societe Nationale des Petroles du Congo*, No. 05 Civ. 5101 (LAP), 2006 U.S. Dist. LEXIS 14264, 2006 WL 846351, at *6 (S.D.N.Y. Mar. 31, 2006); *Boeing Co. v. EgyptAir*

*(In re Air Crash near Nantucket Island, Mass., on Oct. 31, 1999)*, 392 F. Supp. 2d 461, 469 (E.D.N.Y. 2005); *Empresa Generadora de Electricidad ITABO, S.A. v. Corporacion Dominicana de Empresas Electricas Estatales*, No. 05 Civ. 5004 (RMB), 2005 U.S. Dist. LEXIS 14712, 2005 WL 1705080, at *5 (S.D.N.Y. July 18, 2005); *Tonoga, Ltd. v. Ministry of Pub. Works & Hous. of the Kingdom of Saudi Arabia*, 135 F. Supp. 2d 350, 358 (N.D.N.Y. 2001); *Parex Bank v. Russian Sav. Bank*, 116 F. Supp. 2d 415, 422 (S.D.N.Y. 2000); *see also Weininger v. Castro*, 462 F. Supp. 2d 457, 493 n.29 (S.D.N.Y. 2006) (citing *Hanil Bank* but stating that "[u]nder the law of this Circuit, the assertion of personal jurisdiction may also need to satisfy due process").

Here, although the Court largely agrees with the D.C. Circuit's analysis that the text and structure of the Constitution, and principles of comity and international law, support the argument that the Due Process Clause is not an obstacle to the exercise of personal jurisdiction over a foreign state, the Court declines to follow *Price*'s holding for two reasons. First, the parties' briefs do not describe the relationship between the Republic of Azerbaijan and SOCAR in sufficient detail for the Court to determine whether SOCAR is an "agent of the state," *TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 301 (D.C. Cir. 2005), and thus exempt from due process protection. Second, and more importantly, the holding of *Texas Trading* remains good law within the Second Circuit, and any expressions of uncertainty in *Weltover* and *Hanil Bank* are insufficient to justify a ruling to the contrary. "This Court must follow that precedent unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004); *see Distribuidora Dimsa S.A. v. Linea Aerea Del*

*Cobre S.A.*, 768 F. Supp. 74, 77 (S.D.N.Y. 1991) ("A district court has no authority to reject a doctrine developed by a higher court unless subsequent events make it 'almost certain that the higher court would repudiate the doctrine if given a chance to do so.'" (quoting *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986)); Steven G. Calabresi & Gary Lawson, *Equity and Hierarchy: Reflections on the Harris Execution*, 102 Yale L.J. 255, 276 n.106 (1992) ("The hierarchical structure of Article III dictates that inferior courts faithfully apply the precedents of superior courts, just as the hierarchical structure of Article II requires executive officials to follow presidential precedents."). Accordingly, the Court adopts the holding of *Texas Trading* that "the exercise of personal jurisdiction under the FSIA must also comport with the Due Process Clause," *U. S. Titan*, 241 F.3d at 152, and turns now to the due process analysis.

    C.    *Application of the Due Process Analysis to SOCAR*

Frontera argues that this Court may exercise personal jurisdiction in accordance with the Due Process Clause (1) over SOCAR under Rule 4(k)(2) of the Federal Rules of Civil Procedure, or (2) over SOCAR's property. The Court disagrees.

    (1)    <u>Jurisdiction Under Rule 4(k)(2)</u>

Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

*See Norvel Ltd. v. Ulstein Propeller AS*, 161 F. Supp. 2d 190, 199 (S.D.N.Y. 2001); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 434 (S.D.N.Y. 1996); *Mutualidad Seguros del Instituto Nacional de Industria v. M.V. Luber*, No. 95

14

Civ. 10988 (KMW), 1998 U.S. Dist. LEXIS 23165, 1998 WL 1108936, *2 (S.D.N.Y. Sept. 25, 1998).  Frontera's claim arises under federal law, and neither party claims that SOCAR is subject to the jurisdiction of the courts of general jurisdiction of any state, so the only remaining question under Rule 4(k)(2) is whether exercising jurisdiction would be "consistent with the Constitution."  *See Aerogroup*, 956 F. Supp. at 438.

There are two types of personal jurisdiction that a court may assert over a defendant, specific and general.

> Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum"; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & nn. 8–9 (1984)).  Specific personal jurisdiction is inapplicable here, as Frontera has not alleged that its claim arose out of SOCAR's contacts with the United States.  To determine whether general jurisdiction exists under Rule 4(k)(2), a court examines the defendant's nationwide contacts to determine if they are sufficient to support a holding that those contacts constitute "continuous and systematic" presence in the United States.  The Second Circuit has said that the test for general jurisdiction is "a more stringent minimum contacts test" than that for specific jurisdiction, *Metropolitan Life*, 84 F.3d at 568; *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004), "and requires that the defendant's contacts approximate physical presence," *In re Ski Train Fire in Kaprun, Aus.*, 257 F. Supp. 2d 717, 730 (S.D.N.Y. 2003) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)).  A court should consider "whether

the company: (1) maintains an office in the forum state, (2) has employees in the forum state, (3) uses bank accounts in the forum state, or (4) markets or sells products in the forum states." *Id.; see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)); *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952).

Once a court determines that there are adequate minimum contacts with the United States, the court must then determine whether it is "reasonable" to exercise jurisdiction. That latter inquiry examines the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metropolitan Life*, 84 F.3d at 568 (citing *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113–14 (1987)). "Balancing the outcomes of the minimum contacts analysis and reasonableness inquiry is a nuanced and fact-specific exercise." *Daventree Ltd.*, 349 F. Supp. 2d at 761 (citing *Metropolitan Life*, 84 F.3d at 568–69).

In support of its assertion that this Court has personal jurisdiction over SOCAR, Frontera has submitted the following information relating to SOCAR's contacts with the United States[4]: (1) As of 1999, SOCAR had entered into seven production-sharing contracts with U.S. oil companies; (2) As of October 2004, Exxon Mobil and Chevron were the operators of three production-sharing contracts in Azerbaijan, with a total investment of over $7 billion; (3) On September 20, 1994, at a signing ceremony in Baku,

---

[4] Although neither party raises the issue, the Court notes that the presence of an embassy or consulate alone is insufficient to find general jurisdiction over a foreign sovereign defendant. *See World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, 105 (D.D.C. 2000) ("The 'government contacts' exception excludes from jurisdictional consideration a defendant's contacts with federal instrumentalities.").

Azerbaijan, SOCAR, three U.S. oil companies, and other foreign oil companies signed a production-sharing contract for development of Azerbaijan's offshore oil fields; and (4) On March 24, 2006, SOCAR signed a $750 million loan agreement with a syndicate that included U.S. bank Citibank.  Finally, Frontera makes the conclusory allegation that "it is highly likely that at least a portion of [SOCAR's] oil and gas revenues are processed through U.S.-based banks."

These contacts do not come close to "approximat[ing a] physical presence."  *See In re Ski Train Fire*, 257 F. Supp. 2d at 730.  The fact that American oil companies and one bank have entered into contracts with SOCAR for oil production in Azerbaijan does not demonstrate a continuous and systematic presence in the United States.  *See Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04 Civ. 332 (EGS), 2006 U.S. Dist. LEXIS 72231, 2006 WL 2711527, at *14 (D.D.C. Sept. 21, 2006) (finding no basis for jurisdiction under Rule 4(k)(2) upon plaintiff's allegation that defendant had sold oil to the United States, signed production-sharing contracts with U.S. companies, and made deposits into bank accounts in New York); *Base Metal Trading*, 283 F.3d at 216 (same where defendant "is a major aluminum producer in Russia and has extensive business contacts inside Russia as well as around the world including in the United States"); *Helicopteros*, 464 U.S. at 416 (holding that purchasing in forum, sending personnel for training in forum, and negotiating a contract in forum were not sufficient to establish general jurisdiction); *BP Chemicals LTD v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 261 (3d Cir. 2000) (finding no basis for jurisdiction where a Taiwanese corporation "availed itself of the assistance of eight U.S. based companies who solicited its business in Taiwan in order to build a plant in Taiwan allegedly with resulting injury to BP in

Great Britain"); *cf. Daventree Ltd.*, 349 F. Supp. 2d at 764 (holding that a foreign bank's performance of wire transfers are not "minimum contacts").  Frontera has failed to allege any act by which SOCAR "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Because the Court finds plaintiffs' factual allegations do not suffice to demonstrate the existence of national minimum contacts under the Due Process Clause, Rule 4(k)(2) does not permit the exercise of specific jurisdiction over defendant.

Plaintiff has requested additional jurisdictional discovery in the event that the Court determines that SOCAR's national contacts are insufficient to support an exercise of personal jurisdiction.  In the absence of any prima facie showing of personal jurisdiction, however, the Court finds that it would be inappropriate to subject SOCAR to the burden and expense of discovery.  *See Norvel Ltd. v. Ulstein Propeller AS*, 161 F. Supp. 2d 190, 208 (S.D.N.Y. 2001); *Daventree Ltd.*, 349 F. Supp. 2d at 761 (holding that "a court is not obligated to subject a foreign [defendant] to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction" (citing *Jazini*, 148 F.3d at 185–86)).  Plaintiffs' request for discovery into SOCAR's national contacts is denied.

        (2)     <u>Quasi In Rem Jurisdiction</u>

Frontera also argues that this Court may exercise quasi in rem jurisdiction over any assets that SOCAR has in the United States.  In the absence of minimum contacts,

## CONCLUSION

For the foregoing reasons, SOCAR's motion [12] to dismiss the petition to enforce the arbitral award for want of personal jurisdiction is granted and Frontera's motion [6] to confirm the petition and for discovery is denied. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: New York, New York
       March 29, 2007

                                                        Richard J. Holwell
                                            United States District Judge